PAUL C. WILSON, Judge.
Bruce Pierce appeals his convictions for second-degree trafficking and resisting arrest. He claims that both charges should have been dismissed under article I, section 19, of the Missouri Constitution because the trial court lacked authority to retry him after the end of the court term *427 following the term in which his earlier trial ended in a mistrial. In addition, Pierce claims that the trial court erred in refusing his request that the jury be instructed regarding possession as a lesser included offense of second-degree trafficking. Finally, Pierce claims that the evidence was not sufficient to support his conviction for resisting arrest.
The Court rejects the first claim because Pierce failed to raise it at a time when the trial court could still comply with the constitutional deadline for retrials. On Pierce’s second claim, the Court holds that the trial court erred in refusing to give the requested lesser included offense instruction. Finally, the Court rejects Pierce’s third claim because the evidence was sufficient for his conviction for resisting arrest. Accordingly, the Court affirms Pierce’s conviction for resisting arrest, but vacates his conviction for second-degree trafficking and remands the case for further proceedings.

I. Facts

On May 5, 2010, two police officers in a patrol car observed Pierce sitting on the front steps of a vacant building. Pierce began running from the officers when one of them shouted: “Hey, it’s the police. How you doing?” The officers pursued Pierce in their cruiser. When Pierce left the road, one of the officers pursued him on foot. During the chase, this officer observed Pierce throw an object on the ground. The officer retrieved the item, saw it was a clear plastic bag containing a substance he believed to be narcotics, and continued to chase after Pierce. Trailing Pierce by about 20 feet, the officer again identified himself as a police officer, told Pierce that he was under arrest, and ordered him to stop. Pierce continued running through a yard and into a nearby residence, where the officer caught and restrained him.
Pierce was charged with second-degree trafficking under section 195.22B and resisting arrest under section 575.150.1.[1] His first trial, which began on November 9, 2010, ended in a mistrial when the jury was unable to reach a unanimous verdict on either count. After declaring this mistrial, the trial court remanded Pierce into custody and set his case for retrial beginning January 10, 2011. This setting later was continued seven times, however, for a variety of reasons. Pierce did not object to any of these continuances. As a result, his retrial did not begin until November 30, 2011. On that day, for the first time, Pierce moved to have his charges dismissed on the ground that article I, section 19, requires that his trial begin no later than the end of the term following the term in which his earlier mistrial occurred. Because that deadline had passed, Pierce contended that the trial court lacked authority to retry him. The trial court overruled Pierce’s motion to dismiss, and the case proceeded to trial.
During the instruction conference after the close of evidence, the trial court an *428 nounced that it would give the state’s proposed instruction for drug trafficking in the second degree. Pierce did not object to this instruction but requested the court also instruct the jury on the lesser included offense of possession of a controlled substance under section 195. 202.1. The trial court refused this request, and the court also overruled Pierce’s motion for a directed verdict on the resisting arrest charge, finding that the evidence was sufficient to support that charge. The jury found Pierce guilty of resisting arrest and trafficking in the second degree, and the trial court sentenced him to concurrent prison terms of seven and ten years, respectively. Pierce appealed, and this Court has jurisdiction under article V, section 10, of the Missouri Constitution.

II. The Trial Court did not Lack Authority to Retry Pierce

Pierce contends that that the trial court lacked authority to retry him under article I, section 19, of the Missouri Constitution. This section provides, in relevant part, that no person shall:
be put again in jeopardy of life or liberty for the same offense, after being once acquitted by a jury; but if the jury fail to render a verdict the court may, in its discretion, discharye the jury and commit or bail the prisoner for trial at the same or next term of court; and if judgment be arrested after a verdict of guilty on a defective indictment or information, or if judgment on a verdict of guilty be reversed for error in law, the prisoner may be tried anew on a proper indictment or information, or according to the law.
Mo. Const, art I, § 19 (emphasis added).
Pierce’s first trial began on November 10, 2010, i.e., during the November 2010 term of court.[2] That trial ended in a mistrial when the jury was unable to reach a unanimous verdict. The trial court’s next term (i.e., the February 2011 term) began on February 14, 2011, and ended on May 6, 2011. Because Pierce’s retrial did not begin until November 2011, it is clear that the deadline in article I, section 19, was not met. Because the trial court failed to retry him during “the same or next term of court,” Pierce contends that the court lacked authority to retry him at all.
Pierce is not the first defendant to attempt to use the deadline in article I, section 19, to prevent a retrial after the first trial ended with a hung jury. In State v. Fassero, 256 S.W.3d 109 (Mo. banc 2008), this Court rejected the same argument under very similar circumstances.
Fassero argues that, under art. I, sec. 19, his second trial should have commenced before the end of June (“the same term”) or during the next term, from July-September 2004. Because his second trial did not begin until January 18, 2005, Fassero asserts that the trial court did not have jurisdiction. Fassero raises this issue for the first time on appeal.
Generally, a party on appeal “must stand or fall” by the theory on which he tried and submitted his case in the court below. Walker v. Owen, 79 Mo. 563, 568 (Mo.1883). Under this general rule, issues that are not raised in the trial court are waived. Id. Although Fassero acknowledges this general rule, he argues that article I, section 19 deprived the second trial court of jurisdiction. And “jurisdictional” issues, he contends, may *429 be raised for the first time on appeal. Searcy v. State, 981 S.W.2d 597, 598 (Mo.App.1998).
Fassero’s argument results from a misunderstanding of jurisdiction. Jurisdiction describes the power of a court over the person of the defendant (personal jurisdiction) and the authority of the court to hear the particular kind of case (subject matter jurisdiction). See generally, 21 Am.Jur.2d Criminal Law section 503 (2007). The court had power over Fassero’s person. It was empowered to hear criminal cases. The court, thus, had jurisdiction.
Fassero did not object in the circuit court to the timing of his second trial under art. I, sec. 19. His art. I, sec. 19 objection is a constitutional claim that, to be preserved for appellate review, must be made at the first opportunity. State v. Chambers, 891 S.W.2d 93, 103-4 (Mo. banc 1994). If not raised at the first opportunity in the circuit court, a constitutional claim is waived and cannot be raised here. Id.
Fassero, 256 S.W.3d at 117 (Mo. banc 2008) (footnote omitted).
Accordingly, Fassero sets forth two holdings that, taken together, defeat Pierce’s claim. First, Fassero holds that a defendant must raise a claim based on the retrial deadline in article I, section 19, “at the first opportunity” and, if he does not do so, that claim is waived. Second, Fassero holds that, if a defendant fails to raise this constitutional deadline in a timely manner, the trial court’s authority to retry the defendant is not affected by a failure to comply with that deadline.
Pierce seeks to distinguish Fassero by emphasizing that he raised his claim in a motion to dismiss the charges in the trial court, not on appeal as the defendant did in Fassero. But Fassero does not hold that a claim under the retrial deadline in article- I, section 19, only needs to be raised in the trial court to be timely. It holds that such a claim “must be made at the first opportunity.” Fassero, 256 S.W.3d at 117 (emphasis added). Pierce’s “first opportunity” to raise the constitutional retrial deadline in article I, section 19, was not in a motion to dismiss filed long after that deadline had passed. The trial court initially set Pierce’s retrial in time to meet the constitutional deadline of May 6, 2011, i.e., the end of the term following the term in which his first trial occurred. As a result, Pierce had multiple opportunities to raise that deadline when the trial court was considering whether to continue his retrial prior to (and, ultimately, beyond) that date. He chose not to do so. Under Fassero, therefore, Pierce waived his claim under the retrial deadline in article I, section 19, because he failed to raise it at his earliest opportunity.
Enforcing a waiver in these circumstances “is in accord with the usual rule that the trial court must be given the opportunity to correct error while correction is still possible.” Douglass v. Safire, 712 S.W.2d 373, 374 (Mo. banc 1986) (emphasis added). The purpose of the constitutional deadline for timely retrials under article I, section 19, is not to create a trap for unwary trial judges or to produce a windfall (i.e., dismissal) for defendants who do not assert that deadline while compliance is still possible. The purpose of this constitutional deadline is to ensure that neither the defendant nor the state is disadvantaged by stale evidence or fading memories when the only reason for the retrial is the first jury’s failure to reach a verdict. If the defendant wants the benefit of this provision, he must assert it while compliance is still possible.
Pierce’s claim assumes that article I, section 19, explicitly requires all charges to *430 be dismissed whenever a case is not retried before the stated deadline. There is no constitutional language explicitly imposing that consequence, however, and this Court need not decide whether to infer that such a sanction was intended unless and until a defendant invokes this deadline while compliance is still possible and the trial court fails to comply. Here, Pierce did not do so. Accordingly, under the first holding in Fassero, Pierce has waived any claim for relief.
The second holding in Fassero precludes Pierce’s argument that his article I, section 19, claim cannot be waived because it “goes to the very power of the state” to bring him before the trial court at all. The defendant in Fassero made this same argument, and the Court rejected it, holding that a failure to comply with the retrial deadline in article I, section 19, does not deprive the trial court of its “jurisdiction” to retry the defendant. Fassero, 256 S.W.3d at 117. Pierce cannot avoid this holding merely by using the word “authority” everywhere the defendant in Fassero used the word “jurisdiction.” Because a defendant waives his claim under the constitutional retrial deadline in article I, section 19, by not raising it when compliance is still possible, Fassero necessarily — and explicitly — holds that the trial court’s authority to retry the defendant is unaffected by this constitutional deadline unless and until the defendant asserts that deadline in a timely manner. Accordingly, the trial court had authority to retry Pierce after the deadline in article I, section 19, passed because Pierce failed to assert that deadline when it was still possible for the trial court to comply.

III. The Trial Court Erred in Not Giv~ ing Pierce’s Requested Instruction on the “Nested” Lesser Offense of Possession

In the companion case, State v. Jackson, 438 S.W.3d 390, 2014 WL 2861550 (Mo. banc 2014) (No. SC93108), the Court holds:
The question presented in this case is whether the trial court can refuse to give a lesser included offense instruction requested by the defendant under section 556.046 when the lesser offense consists of a subset of the elements of the charged offense and the differential element (i.e., the element required for the charged offense but not for the lesser offense) is one on which the state bears the burden of proof. The answer, unequivocally, is no.
Id. at 392.
As explained in Jackson, a trial court commits error under section 556.046 in such circumstances because: (1) if the evidence is sufficient to convict the defendant of the charged offense, there is always a basis in the evidence to convict the defendant of a “nested” lesser offense; and (2) if the only difference between the charged offense and the “nested” lesser offense is an element on which the state bears the burden of proof, there is always a basis in the evidence to acquit the defendant of the charged offense because the jury is free to disbelieve all or any part of the evidence concerning that differential element. Jackson, 433 S.W.3d at 404-06.
Here, the state charged Pierce with second-degree trafficking under section 195.223.3, and the jury was instructed:
As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
First, that on or about May 5, 2010, in City of St. Louis, State of Missouri, the defendant possessed more than 2 grams of a mixture or substance containing cocaine base, a controlled substance,
*431 Second, that defendant knew or was aware of the presence and nature of the controlled substance, then you will find the defendant guilty under Count I of trafficking in the second degree.
However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.
Pierce did not object to this instruction. Instead, he requested that the trial court also instruct the jury on the lesser included offense of possession of a controlled substance under section 195. 202.1.[3] The only element required for second-degree trafficking that is not also required for possession (i.e., the differential element) is that the jury cannot convict the defendant of second-degree trafficking unless it finds beyond a reasonable doubt that the defendant was in possession of more than two grams of cocaine base. For the reasons set forth in Jackson, the Court holds that the trial court erred in refusing Pierce’s request to instruct the jury on the “nested” lesser offense of possession. Accordingly, Pierce’s trafficking conviction must be vacated and the case remanded.
As in Jackson, the trial court refused to instruct on the lesser offense in this case because it concluded that — in light of the evidence showing that Pierce was in possession of cocaine base weighing more than two grams — all reasonable jurors must believe that evidence and find that the state proved this differential element beyond a reasonable doubt. This was error. Cf. United Brotherhood of Carpenters & Joiners of Am. v. United States, 330 U.S. 395, 410, 67 S.Ct. 775, 91 L.Ed. 973 (1947) (“No matter how clear the evidence, [defendants] are entitled to have the jury instructed in accordance with the standards which Congress has prescribed. To repeat, guilt is determined by the jury, not the court.”) (emphasis added).
Under State v. Santillan, 948 S.W.2d 574, 576 (Mo. banc 1997), the state concedes that the trial court cannot refuse to give a lesser offense instruction merely because Pierce failed to introduce affirmative evidence contesting the differential element (i.e., the weight of the cocaine base in Pierce’s possession). Nevertheless, the state contends that Pierce was not entitled to an instruction on possession because he failed to put that differential element “in dispute,” either by impeaching the credibility of the evidence supporting that element or otherwise creating a “real question” as to why the jury should disbelieve the evidence showing that the cocaine base in Pierce’s possession weighed more than two grams. The state contends that Pierce failed to meet this requirement because all of the evidences showed that he was carrying more than two grams of cocaine base and because Pierce never successfully impeached the credibility of that evidence or explained how or why a reasonable jury could refuse to find that element proved beyond a reasonable doubt.
*432 This Court has often said that the jury is the sole and final arbiter of the facts and, in that role, the jury is entitled to believe or disbelieve all or any part of the evidence before it. See, e.g., State v. Celis-Garcia, 344 S.W.3d 150, 159 (Mo. banc 2011) (“Of course, the jury was free to believe or disbelieve any of the witness testimony.”); State v. Williams, 313 S.W.3d 656, 660 (Mo. banc 2010) (“A jury may accept part of a witness’s testimony, but disbelieve other parts.”) (quoting State v. Pond, 131 S.W.3d 792, 794 (Mo. banc 2004)); State v. Hineman, 14 S.W.3d 924, 927 (Mo. banc 1999) (“The jury is permitted to draw such reasonable inferences from the evidence as the evidence will permit and may believe or disbelieve all, part, or none of the testimony of any witness.”). Some principles prove easier to utter than to abide, however, and so it is with this one.
If the Court is to be true to this oft-stated principle, then this Court must also acknowledge the unavoidable corollary that “evidence never proves any element until the jury says it does.” Jackson, 433 S.W.3d at 392.
No matter how strong, airtight, inescapable, or even absolutely certain the evidence and inferences in support of the differential element may seem to judges and lawyers, no evidence ever proves an element of a criminal case until all 12 jurors believe it, and no inference ever is drawn in a criminal case until all 12 jurors draw it.
Jackson, 433 S.W.3d at 399-400 (emphasis in the original).
Here, the trial court overruled Pierce’s requested instruction on the lesser offense of possession because it concluded that no reasonable jury could believe the evidence showing that Pierce possessed a controlled substance without also believing the evidence that the substance was cocaine base and that it weighed more than two grams. This was error. The decision of what evidence to believe or disbelieve belongs solely to the jury. In determining what instructions are supported by the evidence, the trial court (like the appellate court) is required to decide what facts a reasonable jury may find from the evidence, but it is never permitted to go further and decide what facts the jury must find.
The state attempts to characterize its argument in the familiar terms of a sufficiency review, i.e., that the evidence in this case does not support a conviction for possession, but that is plainly wrong. Because possession is a “nested” lesser offense of the charged crime of second-degree trafficking, any evidence that is sufficient to prove the elements of that charged crime must be sufficient to prove the subset of those elements that comprise the crime of possession.
The unstated premise of the state’s argument is that the evidence in this case is not sufficient for a reasonable jury to find that Pierce’s cocaine base weighed less than two grams. This assertion is reasonable, given the nature of the evidence, but it is wholly irrelevant. The jury was not required to find that Pierce’s cocaine base weighed less than two grams in order to convict him of possession. “Less than two grams” is not an element of possession. Evidence containing undisputed — even un-disputable — proof that the defendant possessed more than two (or 2,000) grams of cocaine base is sufficient to convict that defendant of possession because the jury is not required to make any finding about weight in order to return a guilty verdict for that crime. See Jackson, 433 S.W.3d at 405 (evidence that defendant “was carrying a bazooka and a machete” is irrelevant to whether the evidence is sufficient to support second-degree robbery because *433 the jury does not have to decide whether the defendant was or was not armed in order to convict the defendant of that crime).
By the same token, the jury in this case did not have to find that Pierce’s cocaine base weighed less than two grams in order to acquit him of second-degree trafficking. Under the instruction for second-degree trafficking, the jury was told that the state had the burden of proving beyond a reasonable doubt that this substance weighed more than two grams. Because a jury may always believe or disbelieve all or any part of the evidence before it, the state’s burden of proof is carried only when the jury says it is, i.e., when the jury returns a unanimous guilty verdict.
The only thing the defendant has to do to hold the state to this burden of proof, or to put the elements of a crime “in dispute,” is to plead not guilty. See Jackson, 433 S.W.3d at 406; State v. Moore, 435 S.W.2d 8, 11-12 (Mo. banc 1968) (“It must be remembered, however, that the defendant here entered a plea of not guilty which puts in issue all facts constituting” the crime and the defendant’s guilt). Accordingly, once the defendant pleads not guilty, there will always be a basis in the evidence to acquit the defendant at trial because the jury — and only the jury — is the final arbiter of what that evidence does and does not prove.
[I]n a jury trial the primary finders of fact are the jurors. Their overriding responsibility is to stand between the accused and a potentially arbitrary or abusive Government that is in command of the criminal sanction. For this reason, a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict, regardless of how overwhelmingly the evidence may point in that direction. The trial judge is thereby barred from attempting to override or interfere with the jurors’ independent judgment in a manner contrary to the interests of the accused.
United States v. Martin Linen Supply Co., 430 U.S. 564, 572-73, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977) (emphasis added) (citations omitted).
As in Jackson, therefore, the Court holds that where the defendant requests the trial court to instruct the jury on a “nested” lesser offense, the trial court cannot refuse to give that instruction solely because the court concludes that the evidence is so overwhelming that all reasonable jurors must find the differential element proved beyond a reasonable doubt. “Unless waived, the right to trial by jury means that the jury — and only the jury — will decide what the evidence does and does not prove beyond a reasonable doubt.” Jackson, 433 S.W.3d at 402. Accordingly, the Court vacates Pierce’s conviction for second-degree trafficking and remands the case for further proceedings.

IV. The Evidence was Sufficient to Prove that Pierce Committed the Crime of Resisting Arrest

Pierce asserts that the state did not present sufficient evidence to support his conviction for resisting arrest. This Court’s review of this claim is limited to a determination of whether there was sufficient evidence admitted at trial for a reasonable jury to find Pierce guilty of this crime beyond a reasonable doubt. State v. Silvey, 894 S.W.2d 662, 673 (Mo. banc 1995). The Court considers the evidence (and reasonable inferences) supporting the jury’s verdict in the light most favorable to that verdict and will disregard any evidence or inferences that are inconsistent with that verdict. Id.
*434 Under section 575.150.1, Pierce committed the crime of resisting arrest if: (1) he knew or reasonably should have known that a law enforcement officer was making an arrest; (2) he resisted that arrest by using or threatening to use violence or physical force or by fleeing from the officer; and (3) he did so for the purpose of preventing the officer from completing the arrest. Pierce admits that he knew the officer was attempting to arrest him, and he admits that he ran from the officer so the officer could not do so. Pierce argues that he cannot be convicted of resisting arrest, however, because he started running before the officer decided to — or had grounds to — arrest him. In other words, because the officer did not attempt to arrest him (or have grounds to arrest to him) until he saw Pierce throw away the cocaine (which happened during, not prior to, Pierce’s flight), Pierce argues that his flight cannot constitute resisting arrest.
Pierce relies on decisions from the court of appeals that hold that merely running from an officer is not resisting arrest if the officer was not attempting to arrest the defendant when he began to run. See, e.g., State v. Long, 802 S.W.2d 573, 577 (Mo.App.1991). But these cases do not mean that a defendant is immune from arrest (or prosecution for resisting arrest) as long as he runs before the officer attempts to arrest him, nor would such a rule be supported by the language of the statute. See State v. Chamberlin, 872 S.W.2d 615, 618 (Mo.App.1994) (“Muring a suspect’s flight from a law enforcement officer, the actions of the suspect may constitute a separate crime, giving rise to a reason to arrest the suspect”); State v. Hopson, 168 S.W.3d 557, 561 (Mo.App.2005) (evidence supported conviction for resisting arrest, even though the flight started before officers had grounds to arrest, because the defendant gave the officers grounds to arrest by throwing narcotics out of his car and the defendant continued to flee after the officers attempted to arrest him).
Here, it does not matter whether the officers were attempting to arrest Pierce at the moment he started running. What matters is whether Pierce continued to run after the officer told Pierce to stop because he was under arrest. The evidence was sufficient for the jury to find that Pierce continued running after he dropped the bag that gave the officer probable cause to arrest him and, more importantly, that he continued to run after the officer told Pierce he was under arrest and ordered him to stop. Finally, the evidence was sufficient to prove that Pierce’s purpose in continuing to run after being told he was under arrest was to avoid that arrest. Accordingly, Pierce’s conviction for resisting arrest is affirmed.

V. Conclusion

For the reasons set out above, Piece’s conviction for resisting arrest is affirmed. His conviction for second-degree trafficking is vacated, however, and the case is remanded.
RUSSELL, C.J., and FISCHER, J., concur; BRECKENRIDGE, J., concurs in section II of opinion of WILSON, J.; TEITELMAN, J., concurs in opinion of WILSON, J., except section II; STITH, J., concurs in part and dissents in part in separate opinion filed;
BRECKENRIDGE, J., concurs in section II of opinion of STITH, J.; TEITELMAN, J., concurs in section I of opinion of STITH, J.; DRAPER, J., dissents in separate opinion filed; STITH, J., concurs in opinion of DRAPER, J.

. All statutory references are to RSMo 2000 unless otherwise indicated. Sections 195.222 (first-degree trafficking) and 195.223 (second-degree trafficking) were amended in August 2012. One effect of the amendment was to increase the amount of cocaine base required for second-degree trafficking from two grams to eight grams. Section 195.223 RSMo Supp. 2012; S.B. 628, 96th Gen. Assemb., 2d Reg. Sess. (Mo.2012). But a defendant must be tried for the offense as defined by the law that existed at the time of the offense. State v. Edwards, 983 S.W.2d 520, 521 (Mo. banc 1999); Section 1.160. Accordingly, because the crime occurred in 2010 and Pierce was sentenced in May 2012, the 2012 amendments are not relevant to this case, and Pierce is subject to the previous version of section 195.223.

. Because the St. Louis City Circuit Court has no local rule governing terms of court, section 478. 205 establishes those terms. It sets four terms each year, and those terms begin on the second Monday of each February, May, August, and November.

. Pierce tendered the following verdict director for the "nested” lesser offense of possession:
As to Count I, if you do not find the defendant guilty of trafficking in the second degree as submitted in Instruction No. -, you must consider whether he is guilty of possessing a controlled substance.
As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
First, that on or about May 5, 2010, in the City of St. Louis, State of Missouri, the defendant possessed cocaine base, a controlled substance, and Second, that defendant knew or was aware of its presence and nature,
Then you will find the defendant guilty under Count I of possessing a controlled substance.