

# In the
# Missouri Court of Appeals
# Western District

DAVID N. BRIGGS,

                   **Appellant,**

v.

STATE OF MISSOURI,

                   **Respondent.**

**WD76056**

**OPINION FILED:**

**August 12, 2014**

---

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable James Dale Youngs, Judge**

**Before Division Two: Victor C. Howard, P.J., James Edward Welsh, and Anthony Rex Gabbert, JJ.**

David Briggs appeals the circuit court's denial of his Rule 29.15 motion for post-conviction relief in which he alleged ineffective assistance of trial counsel. We affirm.

## Background

Briggs was arrested and charged with one count of first-degree murder (§ 565.020, RSMo[1]), one count of first-degree robbery (§ 569.020), and two counts of armed criminal action (§ 571.015), in connection with the January 24, 2008, robbery and murder of a fifty-one year old man.

---

[1]Statutory references are to the Revised Statutes of Missouri (RSMo) 2000, unless otherwise noted.

Briggs testified at his trial that he was eighteen years old and had been living with the victim since November 2007. He stated that the victim took him in when he did not have a place to stay. Briggs said that he initially regarded the victim as a father figure. Eventually, Briggs testified the victim let Briggs know that he wanted a sexual relationship with him, a situation with which Briggs was "not comfortable."

Briggs stated that on the morning of January 24, 2008, he woke up to find the victim on top of him trying to pull his pants down. Briggs pushed him away, grabbed his school clothes, and drove the victim's vehicle to school. During the day, the victim left multiple messages on Briggs's cell phone indicating that he was upset with Briggs for driving the victim's vehicle to school.

That evening, Briggs drove to the victim's apartment, accompanied by Derrick Wooten and Joyce Livingston. Briggs said that he went there to approach the victim about "the homosexual thing" and that he wanted Wooten to come along in case of a fight. Briggs also planned to retrieve his own belongings and to steal another of the victim's cars. When they arrived, Briggs went up to the apartment, and Wooten and Livingston stayed in the car. Briggs carried Wooten's .38 caliber handgun with him. Briggs knocked on the door, and the victim opened the door and started arguing with Briggs. Briggs then began throwing punches, and the two men got into a fight. At one point, the victim kicked Briggs's chest, separating the two. Briggs then ran to the closet and grabbed a .45 caliber handgun.

Briggs then walked downstairs where the victim was knocking on a neighbor's door for help. Briggs fired the .45 caliber handgun at the victim until the gun would not fire anymore. Briggs said that he "freaked out" and ran around the apartment building. He then ran back to the victim's apartment to grab the keys to the victim's other vehicle. He saw the victim and shot him

2

several more times with Wooten's .38 caliber handgun.  He stated:  "Everything was just happening fast.  Nothing clear was going through my mind."

Briggs's statement to the police (a videotape of which was played at trial) was consistent with his trial testimony.  Briggs told the police that he intended to confront the victim and that he planned to fight with the victim and to steal his cars.  After first shooting the victim with the .45 caliber handgun, and then running around the apartment building, Briggs said that he returned and found the victim moving around, so he shot him with the .38 caliber handgun.  He told the police that something in the back of his head told him:  "You got to finish it off.  You started it and got to finish it."  Briggs said that he then ran back to the apartment to retrieve the victim's car keys and wallet.  Briggs, Livingston, and Wooten drove off with the two cars, which they later abandoned in a parking lot.  Briggs said that he threw both guns into the river.

The medical examiner testified that the victim had been shot ten times and that those gunshot wounds were the cause of death.  When police found the victim's two vehicles, they retrieved Briggs's book bag from the trunk of one of them.  The bag contained the car titles to the victim's two cars.  At Livingston's home, the police found credit cards, a driver's license, and a wallet belonging to the victim.  At Wooten's home, they found the .38 caliber handgun Briggs had utilized.  A police firearms examiner verified that it was the gun that had fired bullets recovered from the crime scene and from the morgue.  The .45 caliber handgun was not found.

At the close of the evidence, the circuit court submitted three verdict directors related to the murder charge, for first-degree murder, second-degree murder, and second-degree felony murder.  The jury convicted Briggs of first-degree murder, first-degree robbery, and two counts of armed criminal action.  The court sentenced Briggs to consecutive prison terms of life without

parole, ten years, three years, and three years, respectively. This court affirmed Briggs's convictions and sentences on direct appeal in *State v. Briggs*, 318 S.W.3d 203 (Mo. App. 2010).

Briggs timely filed a *pro se* Rule 29.15 motion for post-conviction relief on December 7, 2010. On March 15, 2011, the motion court appointed the public defender to represent him, and appointed counsel filed an amended motion on June 14, 2011. The motion alleged, *inter alia*, that trial counsel was ineffective for "[f]ailing to request verdict-directing instructions that modified the verdict director for murder in the second degree and instructed the jury on voluntary manslaughter." The motion alleged eight other claims of ineffective assistance.

At the evidentiary hearing, Briggs's trial counsel testified regarding his trial strategy that "[i]t was pretty obvious to us we'd be going to trial arguing Murder II" if the defense could not negotiate a guilty plea to second-degree murder. Counsel stated that he did not ask for a voluntary manslaughter instruction because he did not believe it would be allowed given that "voluntary manslaughter is not a lesser included offense of felony murder." Counsel agreed that voluntary manslaughter is a lesser-included offense of both first-degree and second-degree murder. He stated: "If it had been just charged as traditional first-degree murder, I would've requested voluntary manslaughter. I believe that the evidence of a fight would've been sufficient to ask for a voluntary manslaughter instruction." On cross-examination, counsel stated that he did not believe that there was evidence to acquit of felony murder and, in light of that, he did not believe that the circuit court would have submitted a voluntary manslaughter instruction.

The circuit court denied Briggs's post-conviction motion. With regard to his claim that counsel was ineffective for failing to request an instruction on voluntary manslaughter, the court concluded that Briggs "failed to present evidence that a lesser offense could have been properly submitted or that there was a basis for the jury to return a verdict on the lesser offense."

4

**Standard of Review**

Our review of the circuit court's ruling on a Rule 29.15 motion is limited to determining whether its findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k). Findings and conclusions are clearly erroneous if we are "left with a definite and firm impression that a mistake has been made." *Johnson v. State*, 406 S.W.3d 892, 898 (Mo. banc 2013).

**Discussion**

In his first point on appeal, Briggs contends that the circuit court erred in denying his post-conviction motion because his trial counsel rendered ineffective assistance by failing to request that the court instruct the jury on the lesser-included offense of voluntary manslaughter. Briggs claims that there is a reasonable likelihood that the outcome of the trial would have been different if the jury had been instructed on voluntary manslaughter.

To prevail on an ineffective assistance of counsel claim, the movant must show, by a preponderance of the evidence, that counsel failed to satisfy the test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Johnson*, 406 S.W.3d at 898. That test requires the movant to establish both (1) that his attorney's performance "did not conform to the degree of skill, care, and diligence of a reasonably competent attorney," and (2) that his attorney's failures prejudiced his case. *Tisius v. State*, 183 S.W.3d 207, 211-12 (Mo. banc 2006) (citing *Strickland*, 466 U.S. at 687). To satisfy the performance prong of *Strickland*, the movant must overcome the strong presumption that counsel acted professionally and that any challenged action was based on sound trial strategy. *Id.* at 211. To prove prejudice, he must show that, "but for counsel's poor performance, there is a reasonable probability that the outcome of the court proceeding would have been different." *Id*. at 212.

5

The crimes at issue in this case are defined in Chapter 565. A person commits first-degree murder, "if he knowingly causes the death of another person *after deliberation* upon the matter." § 565.020.1, RSMo (emphasis added). A person commits conventional second-degree murder, if he "[k]nowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person." § 565.021.1(1). A person commits second-degree felony murder if he "[c]ommits or attempts to commit any felony, and, in the perpetration . . . of such felony . . . , another person is killed as a result of the perpetration . . . of such felony." § 565.021.1(2). Voluntary manslaughter is committed when a person "[c]auses the death of another person under circumstances that would constitute murder in the second degree under [section 565.021.1(1)], *except that he caused the death under the influence of sudden passion arising from adequate cause.*"[2] § 565.023.1(1) (emphasis added).

Voluntary manslaughter is a lesser-included offense of both first-degree and second-degree murder. § 565.025.2. Pursuant to section 556.046, a trial court is required to give an instruction for a lesser-included offense "when the evidence provides a basis both for the acquittal of the greater offense and the conviction of the lesser offense." *See State v. Johnson*, 284 S.W.3d 561, 575 (Mo. banc 2009); § 556.046.3, RSMo 2007 Cum. Supp. In two recent direct criminal appeals, *State v. Jackson*, ---S.W.3d---, No. SC93108 (Mo. banc June 24, 2014), and *State v. Pierce*, ---S.W.3d---, No. SC93321 (Mo. banc June 24, 2014), the Missouri Supreme

---

[2]"Sudden passion" is defined as "passion directly caused by and arising out of provocation by the victim . . . which passion arises at the time of the offense and is not solely the result of former provocation." § 565.002(7), RSMo. "Adequate cause" means "cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control." § 565.002(1), RSMo.

Court held that when the defense requests an instruction on certain[3] lesser-included offenses, the trial court must submit it. This case differs from *Jackson* and *Pierce*, however, in that the jurors in those cases apparently were not given *any* lesser-included offense instructions, leaving them with an "all-or-nothing" choice.[4] In contrast, the jury in this case was instructed on first-degree murder, conventional second-degree murder, and second-degree felony murder and chose to convict Briggs of first-degree murder. Additionally, while *Jackson* and *Pierce* clearly control the issue of when a ***requested*** instruction ought to be given by the court, in the case at bar, the issues are the ineffectiveness of counsel for failure to request a lesser-included instruction and the prejudice, if any, as a result of that failure.[5]

As noted, to prevail on a claim of ineffective assistance of counsel, the movant must satisfy *both* the performance prong and the prejudice prong of *Strickland*. *Sanders v. State*, 738

---

[3]These certain cases are referred to as nested offenses. A "nested" lesser-included offense is one that consists of a "subset" of the elements of the charged offense, where the "differential element" (*i.e.*, the element required for the charged offense but not for the lesser offense) is one on which the State bears the burden of proof. *Jackson*, No. SC93108, slip op. at 1-2. We need not and do not determine whether voluntary manslaughter is a nested offense of conventional second-degree murder.

[4]See also *McNeal v. State*, 412 S.W.3d 886, 888-89 (Mo. banc 2013), where the 29.15 movant claimed that counsel was ineffective for not submitting a trespass instruction, leaving the jury with an all-or-nothing choice between a conviction for burglary or acquittal, and the jury chose conviction. There, the circuit court denied the 29.15 motion without an evidentiary hearing, and the Supreme Court reversed and remanded for an evidentiary hearing on that claim. *Id*. at 893. The Court opined that "the failure to provide the jury with the option of a lesser-included offense deprives the defendant of a fair trial, even if the jury ultimately convicts the defendant of the greater offense." *Id*. at 892. That conclusion was based primarily on the theory that, where the evidence shows that "the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction." *Id*. As noted by the dissent in *McNeal*, this runs contrary to the presumption that juries follow the instructions explicitly. *See id*. at 895-96 (Wilson, J., dissenting) (noting that the majority opinion fails to adhere to the presumption that the "jury acted according to law" and "fails to exclude [and in fact, relies on] the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like") (citing *Strickland*, 466 U.S. at 694-95)). In any event, the type of prejudice that might have existed in *McNeal* did not exist here where the jury was presented with two lesser-included offense instructions, not an all-or-nothing choice. Moreover, unlike this case, the issue in *McNeal* was whether or not the movant was entitled to an evidentiary hearing on his claim.

[5]In a 29.15 proceeding, both we and the motion court have the benefit of hindsight when assessing prejudice, but a trial court when instructing a jury must account for the proposition that the State may fail to carry the burden of persuasion placed upon it by law. Further, in a post-conviction proceeding, the movant bears the burden of proving that he was prejudiced by counsel's alleged failure, but on direct appeal, when a trial court fails to give a required instruction, prejudice may be presumed.

7

S.W.2d 856, 857 (Mo. banc 1987). In assessing whether the movant has satisfied the prejudice prong of *Strickland*, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." 466 U.S. at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. As explained in *Strickland*, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id*. at 697. Such is the case here.

Briggs contends that he was prejudiced because, if the voluntary manslaughter instruction had been given, there is a reasonable likelihood (based on the evidence of his confusion and anger over the unwanted sexual advance, the repeated phone calls from the victim, and the fight preceding the shooting)[6] that the jury would have found that he acted "under the influence of sudden passion arising from adequate cause" and convicted him on that lesser offense. Briggs also claims that if the jury had had "three levels of homicide to consider, there was a reasonable probability that the jury might have compromised and found [him] guilty of second degree murder."

First, Briggs does not persuade us that the mere addition of a voluntary manslaughter instruction would have caused the jury to "compromise" on a second-degree murder conviction (as opposed to following the instructions and the law, as we must presume all juries do, *see*

---

[6]The State contends that these facts would not support a finding of sudden passion arising from adequate cause, in that Briggs went to the victim's house armed intending to confront the victim and steal his cars, Briggs was the initial aggressor in the physical altercation and the victim was unarmed, and the shooting occurred several hours after the unwelcome sexual advance.

8

*Strickland*, 466 U.S. at 694-95). But, in any event, Briggs's theories of prejudice are negated by the fact that the jury had three versions of homicide to choose from (*i.e.*, first-degree murder and two variations of second-degree murder), and chose to convict on the highest offense submitted. As the circuit court noted,[7]

> [the] movant was not prejudiced because the issue of whether movant deliberately killed the victim was adequately presented to the jury in the form of the verdict directing instruction for second degree murder--a proposition [that] the jury rejected by convicting movant of murder in the first degree.

We agree. In *State v. Petary*, 781 S.W.2d 534, 544 (Mo. banc 1989),[8] where the jury was instructed on first-degree and conventional second-degree murder and convicted the defendant of first-degree murder, our Supreme Court held that the defendant was not harmed by the absence of an instruction on second-degree felony murder, in that such an instruction "would have been superfluous." The Court further held that "[b]ecause the instruction would have been superfluous, there is also no ineffective assistance of counsel with respect to his claim." *Id.*[9] Here, the jury could have convicted Briggs of second-degree murder or second-degree felony

---

[7]The court reached this conclusion in response to Briggs's related claim, in Point #2 of his amended 29.15 motion, that trial counsel was ineffective for failing to question potential jurors about their ability to consider voluntary manslaughter as an alternative to first-degree murder. The finding is equally applicable to this claim.

[8]*Vacated and remanded on other grounds,* 494 U.S. 1075 (1990), *reaffirmed,* 790 S.W.2d 243 (Mo. banc), *cert. denied,* 498 U.S. 973 (1990).

[9]We note that our Supreme Court has previously held that the failure to give an additional lesser-included offense instruction is neither erroneous nor prejudicial when instructions for the greater offense and one lesser-included offense are given, and the defendant is found guilty of the greater offense. *See, e.g., State v. Johnson*, 284 S.W.3d 561, 575-76 (Mo. banc 2009); *State v. Glass*, 136 S.W.3d 496, 515 (Mo. banc 2004); *State v. Jones*, 979 S.W.2d 171, 185 (Mo. banc 1998). As we explained in *State v. Nutt*, the rule applied in *Johnson*, *Glass*, and *Jones* is subject to an exception where the lesser offense that was actually submitted at trial did not "test" the same element of the greater offense that the omitted lesser offense would have challenged. 432 S.W.3d 221, 224-25 (Mo. App. 2014) (citing *State v. Frost*, 49 S.W.3d 212 (Mo. App. 2001)). But that exception is not applicable here: the conventional second-degree murder instruction that was given at trial already "tested" the element of deliberation required for a first-degree murder conviction. The omitted voluntary manslaughter instruction did not challenge a different element of first-degree murder. Instead, a voluntary manslaughter instruction would have required the jury to find all of the elements of conventional second-degree murder, but to *also* find that Briggs acted under the influence of sudden passion.

murder if the jurors had had any doubt about whether he knowingly caused the victim's death *after deliberation*, but the jury found him guilty of first-degree murder.

Given that the jury convicted Briggs of first-degree murder when it could have convicted him of either of the two types of second-degree murder, and given the overwhelming evidence that supports that conviction, even if trial counsel had requested an instruction on voluntary manslaughter and the instruction had been given, there is no reasonable probability that the outcome of the trial would have been different. Thus, Briggs has not proven prejudice, and the circuit court did not clearly err in denying his motion for post-conviction relief. Point denied.

In Point II, Briggs claims that the circuit court erred in failing to inquire into whether Briggs's post-conviction counsel abandoned him by failing to timely file an amended motion and by filing an amended motion that did not properly assert Briggs's post-conviction claims and was so patently defective that it amounted to a nullity.

Briggs did not present his claim of abandonment to the circuit court. Generally, a matter not presented to the post-conviction court is not preserved and may not be presented for review on appeal. *Logan v. State*, 377 S.W.3d 623, 626 (Mo. App. 2012); *White v. State*, 366 S.W.3d 103, 104 (Mo. App. 2012). Our review of the denial of post-conviction relief is limited to a determination of whether the motion court's findings and conclusions are clearly erroneous. *See Linder v. State*, 404 S.W.3d 926, 930 (Mo. App. 2013); Rule 29.15(k). Because the issue of abandonment by post-conviction counsel was never raised before the circuit court, no findings or conclusions were made on this issue, and, thus, there is nothing for us to review on appeal.

Rule 84.13 authorizes plain error review of unpreserved errors in some instances, but there is no plain error review from the denial of a post-conviction motion. *White*, 366 S.W.3d at 104 (citing *Hoskins v. State,* 329 S.W.3d 695, 696 (Mo. banc 2010)). In *Hutton v. State*, 345

S.W.3d 373, 377 (Mo. App. 2011), we explained that an abandonment claim is no exception to that rule because, even though the movant would have no reason to raise abandonment in his *pro se* motion (in that he would not be aware that post-conviction counsel would ultimately abandon him), he could bring the issue of abandonment to the court's attention.[10] This would give the movant the opportunity to put his arguments before the circuit court, and, if granted, this court would then have a clear record from which to review the motion court's ruling on the abandonment issue. *Id*. at 377-78; *see also Linder*,[11] 404 S.W.3d at 929-30 (where appellant failed to raise abandonment before the motion court, this court held that had appellant filed a "motion to reopen,"[12] it would have opened the door to appellate review).

Here, because Briggs did not present his claim that he was abandoned by post-conviction counsel to the circuit court, and the circuit court was not required to review the issue *sua sponte*, there are no findings or conclusions for us to consider. Thus, we cannot possibly reverse under the standard of review in Rule 29.15(k).

Point II is denied.

---

[10]Our Supreme Court recently clarified that a late filing may be accepted when a movant has been abandoned by post-conviction counsel, but that a "motion to file an untimely post-conviction relief motion is not the same as filing a motion to 're-open.'" *Eastburn v. State*, 400 S.W.3d 770, 774 (Mo. banc 2013). "While parties may have referred to this motion as one to 're-open' the post-conviction proceedings based on abandonment, this nomenclature does not exist in our rules and should not be used henceforth." *Id*.

[11]This court opined in *Linder* that the movant could have filed a motion to amend the judgment under Rule 78.07(c) if she desired findings on the issue of abandonment. 404 S.W.3d at 930. Rule 78.07(c) provides: "In all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." Here, Briggs filed a Rule 78.07 motion, but it did not, at any point, raise a claim that Briggs had been abandoned by post-conviction counsel; nor did it ask for findings and conclusions on that issue.

[12]*See* fn. 10, *supra*.

## Conclusion

We affirm the circuit court's judgment denying post-conviction relief.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.