

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION THREE</u>

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110580 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | Cause No. 20SL-CR04183-01 |
| | ) | |
| GERARDO GONZALEZ, SR., | ) | Honorable Joseph S. Dueker |
| | ) | |
| Appellant. | ) | Filed: June 13, 2023 |

**Introduction**

A trial jury found Appellant Gerardo Gonzalez guilty of two counts of statutory sodomy, and he was sentenced to a total of 30 years in prison. Gonzalez appeals the trial court's judgment and requests plain error review. We decline to review for plain error. The trial court's judgment is affirmed.

**Background**

This Court reviews the facts in the light most favorable to the jury's verdict. *State v. Johnson*, 284 S.W.3d 561, 568 (Mo. banc 2009).

Gonzalez was charged with three counts of first-degree statutory sodomy for having deviate sexual intercourse with E.G., K.G, and A.M., all of whom were less than 12 years old at the time. E.G. is the younger sister of M.G., Gonzalez's ex-wife. K.G. is the younger sister of M.G. and E.G. A.M. is M.G.'s niece. Gonzalez and M.G. were married from 2005 to 2012,

although they separated in 2010. The marriage was troubled, and M.G. called the police on multiple occasions for domestic abuse.

In September 2020, A.M. disclosed to her aunt, S.G., who is also M.G.'s sister, that Gonzalez had sexually abused her when she was a child. A.M. told S.G. that she felt she needed to finally come forward, despite Gonzalez's threats that he would kill her father if she ever told anyone, because she did not want Gonzalez to similarly abuse his stepdaughter from his second marriage.

Following A.M.'s disclosure, S.G. asked K.G. if she had any similar experiences with Gonzalez. K.G. disclosed that Gonzalez had similarly abused her and E.G. as children. S.G. informed M.G. of these revelations and eventually contacted the police.

Gonzalez was charged with three counts of statutory sodomy. Though K.G. and A.M. disclosed in their depositions and police interviews other conduct that ultimately was not charged, defense counsel did not move *in limine* to exclude the uncharged conduct. The State, for its part, filed a motion *in limine* to exclude evidence of prior bad acts of witnesses. The trial court took up the motion early in the trial. Defense counsel offered that "part of the defendant's theory of this case" was that the victims' disclosures of sexual abuse resulted from the tumultuous relationship between Gonzalez and M.G. Defense counsel planned to allude in cross-examination to that tumultuous relationship, cognizant that he would "open the door" to evidence of Gonzalez's prior bad acts and uncharged conduct, such as domestic violence. The trial court confirmed this was defense counsel's "theory of the case" and "trial strategy," counsel had discussed that strategy with Gonzalez, and Gonzalez elected to go ahead with the strategy.

At trial, E.G., K.G., and A.M. testified to incidents in which Gonzalez sexually abused them as children. While E.G. testified to only one charged incident, K.G. and A.M. testified without objection to both charged and uncharged conduct.

K.G. testified that Gonzalez sexually abused her many times when she was between four and six years old. She testified to charged conduct in which Gonzalez told K.G. to hide downstairs in the basement during a game of hide and seek. Gonzalez found K.G. in the laundry room and touched her under her clothes.

K.G. also testified to several incidents of uncharged conduct. On one occasion, K.G. fell asleep on the couch at M.G.'s house while M.G. was asleep in her bedroom. K.G. woke up to Gonzalez and other men in the room. Gonzalez touched her breasts and private areas with his hands and exposed his penis. Gonzalez ejaculated while the other men looked on laughing. K.G. did not clean up because she was scared. Instead, she put a blanket over her head and tried to go back to sleep.

K.G. did not tell anyone about any of the incidents because Gonzalez threatened to kill her father and she was scared.

A.M. similarly testified that Gonzalez sexually abused her multiple times when she was between six and seven years old. She testified about charged conduct in which Gonzalez grabbed her while she and her cousins were leaving the basement. He pulled her into the laundry room and put his penis in her mouth.

A.M. further testified to uncharged conduct. One such incident occurred at M.G.'s house when she was playing hide and seek with her cousins. A.M. testified that Gonzalez grabbed her, covered her mouth, and told her he would kill her if she said anything. Gonzalez then touched A.M.'s vagina under her pants but over her underwear. A.M. ran and hid under the kitchen table

3

where some of the adults were sitting. When the adults asked what was wrong, A.M. said she saw a ghost.

A.M. never told anyone about what happened to her because Gonzalez told her he would kill someone in her family if she did and she was scared.

The jury acquitted Gonzalez on Count I, which charged first-degree statutory sodomy of E.G. The jury convicted Gonzalez on Counts II and III, which charged first-degree statutory sodomy of K.G. and A.M., respectively. The trial court sentenced Gonzalez to concurrent terms of 30 years in prison. Gonzalez appeals.

**Discussion**

Gonzalez raises three points on appeal. In his first two points, he argues the trial court plainly erred in admitting the testimony of K.G. and A.M. to uncharged acts without pre-trial notice of the State's intent to adduce that evidence and a pretrial determination of admissibility by the trial court. In his third point, Gonzalez argues the court plainly erred in admitting the evidence because it was propensity evidence, the probative value of which was substantially outweighed by the danger of unfair prejudice. In all three points, Gonzalez alleges violations of his constitutional right to due process. We affirm the judgment of the trial court.

Article I, section 18(c) of the Missouri Constitution authorizes the admission of relevant evidence of prior criminal acts in prosecutions for crimes of a sexual nature involving a minor for the purpose of corroborating the victim's testimony or demonstrating a defendant's propensity to commit the charged crime. A trial court must exclude relevant evidence of prior criminal acts, however, if the evidence is not legally relevant, that is, the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *State v. Williams*, 548 S.W.3d 275, 285 n. 11 (Mo. banc 2018). The trial court nonetheless is not required to make an

express finding of legal relevance before admitting the evidence, provided the record reflects a sound basis for the balancing required by Article I, section 18(c). *Id*. at 286.

Gonzalez concedes that defense counsel did not object to either K.G.'s or A.M.'s trial testimony regarding Gonzalez's uncharged prior criminal acts and his points are not preserved for appeal. He therefore requests plain error review. *See* Rule 30.20.[1]

Generally, we do not review unpreserved claims of error. *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020). Rule 30.20 is an exception allowing that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *Id.* (quoting Rule 30.20). Rule 30.20 makes clear that plain error review is a discretionary, two-step process. *See State v. Minor*, 648 S.W.3d 721, 731 (Mo. banc 2022). The first step is to determine whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009). In the absence of such a determination, an appellate court should decline to review for plain error. *See Brandolese*, 601 S.W.3d at 526; *State v. Scurlock*, 998 S.W.2d 578, 586 (Mo. App. W.D. 1999). If plain error is found on the face of the claim, then the court may proceed, in the second step, to determine whether the claimed error resulted in manifest injustice or miscarriage of justice. *See Baumruk*, 280 S.W.3d at 607; *Scurlock*, 998 S.W.2d at 586.

Missouri courts consistently have held that a trial court does not commit plain error for failing to *sua sponte* prohibit the introduction of improper evidence "*when the record clearly indicates* that the defendant's counsel strategically allowed that action." *State v. Snyder*, 592 S.W.3d 375, 381 (Mo. App. S.D. 2019) (emphasis in original); *see also State v. D.W.N.*, 290

---

[1] All Rule references are to the Missouri Supreme Court Rules (2022) unless otherwise indicated.

5

S.W.3d 814, 820, 827 (Mo. App. W.D. 2009) (finding trial court did not commit plain error by failing to *sua sponte* prohibit testimony when record clearly indicated defense counsel chose not to object for strategic reasons).

To conclude otherwise would encourage trial courts to interject at trial when counsel has opted not to. Uninvited interference by the trial court generally is discouraged because it risks injecting the court as a participant and invites error. *State v. Paine*, 631 S.W.3d 691, 694 (Mo. App. W.D. 2021) (citing *State v. Kunonga*, 490 S.W.3d 746, 755 (Mo. App. W.D. 2016)). Accordingly, a trial court should take independent action in only the most exceptional circumstances, and an appellate court will rarely find plain error where a trial court has failed to act *sua sponte*. *Id.*

The *D.W.N.* court succinctly explained how plain error review in this scenario would whipsaw the trial courts:

> If the trial court received the evidence…the accused could ... claim receipt of the evidence was plain error, requiring reversal. If the trial court *sua sponte* excluded the evidence, the accused could contend on appeal that the trial court improperly interfered by barring evidence which the accused consciously chose to allow the jury to hear, thereby requiring reversal. To state the scenario is to expose its potential for mischief.

290 S.W.3d at 825 (quoting *State v. Hamilton*, 892 S.W.2d 774, 781 (Mo. App. S.D. 1995) (internal alteration omitted)).

We therefore consider whether the record clearly indicates that defense counsel strategically allowed the uncharged conduct into evidence, s*ee Snyder*, 592 S.W.3d at 381; *D.W.N.*, 290 S.W.3d at 827, and whether Gonzalez's claim of error thus fails to establish substantial grounds to believe that manifest injustice or miscarriage of justice resulted from its admission, s*ee Baumruk*, 280 S.W.3d at 607.

At the outset, defense counsel chose not to file any motion *in limine* to exclude K.G.'s or A.M.'s testimony of Gonzalez's uncharged conduct, despite that counsel had actual notice of the testimony from the victims' depositions and other pre-trial statements. Instead, counsel made clear the defense theory of the case that the victims' disclosures of sexual abuse resulted from the tumultuous relationship between Gonzalez and M.G. As part of a trial strategy approved by Gonzalez, counsel alluded to that tumultuous relationship knowing that he would "open the door" to other prior bad acts and uncharged conduct.

Defense counsel pursued that strategy as early as opening statement. *See Paine*, 631 S.W.3d at 695 ("The primary purpose of opening statement is to inform the judge and jury of the general nature of the case, so they may appreciate the significance of the evidence as it is presented."). Defense counsel alleged the victims' similar accounts of sexual abuse were fabricated and coordinated by the family to punish Gonzalez for his mistreatment of M.G. during their marriage. He suggested the victims' anticipated testimony to multiple incidents of sexual abuse was not credible because such pervasive and obvious conduct would have been found out by other family members:

> It's important to know, as the prosecuting attorney alluded to in the opening statement, that this was not a single transactional event according to the girls who will come in now as young women and testify about events that happened to them during that time. Some of these young ladies will testify this happened to them five, six, seven occasions…. Notions of erect penises and ejaculate and that kind of thing. These are all things that they described as young women in September of 2020, nothing that they disclosed as children throughout that time. Hiding under tables . . . . At no point in time was there ever a moment where a parent turned around and said, what's wrong.

On cross-examination of K.G., defense counsel inquired at length about the uncharged incident in which she awoke on the couch with Gonzalez and other men in the room. He repeatedly asked why K.G. never told any of her family what was going on and how it was possible that the adults did not notice something was wrong.

7

Defense counsel similarly cross-examined A.M. about the numerous incidents that went unnoticed by the family. Regarding one of the uncharged incidents, defense counsel asked, "[Y]ou went and you hid under the table and you told your family that you had seen a ghost. . . . You don't remember them ever asking [Gonzalez] what was wrong since you had just run in to them and seemed to be scared of something, they didn't ask him what was going on or what was wrong?"

Finally, in closing argument, defense counsel maintained that the victims' testimony was implausible and resulted from collusion within the family to fabricate the claims:

> [T]hey went ahead and told the police a remarkably similar story to each other's story. The acts were similar. . . . All of the explanations of the behavior the same. And the reason for not reporting is the same…. There's a reason why all the stories are the same, and [M.G.] finally gave that explanation during her testimony when she finally admitted what [S.G.] would not admit. And that is the fact that these families talk about everything.

As he did during cross-examination, counsel repeatedly called into question how such conduct could have gone unnoticed by the family. Counsel specifically referred to K.G.'s testimony to the uncharged incident on the couch:

> The idea that after such an act that would happen to a child…that nobody would see what was going on is just too implausible to believe in a house of that size…. That [M.G.] is sleeping in her bedroom while my client and . . . some other deviant men are standing over a child ejaculating on her… that the child doesn't say anything, that there's nothing peculiar about the way she looks the next morning or is acting the next morning that nobody would notice. It is not only implausible, it is impossible.

On this record, Gonzalez's claim of error fails to establish substantial grounds to believe that manifest injustice or miscarriage of justice resulted from the admission of the uncharged conduct. *See Baumruk*, 280 S.W.3d at 607; *see also Snyder*, 592 S.W.3d at 381; *D.W.N.*, 290 S.W.3d at 820, 827. We therefore decline to review for plain error.[2]

---

[2] Gonzalez's constitutional claims also are waived because they were not raised at the first opportunity in the trial court. *See Marr*, 499 S.W.3d at 377. The principle that a constitutional claim is waived if not raised at the first

## Conclusion

We affirm the judgment of the trial court.

_____

Cristian M. Stevens, J.

John P. Torbitzky, J., concur.
Gary M. Gaertner, Jr., P.J., concurs in the result only.

---

opportunity "is in accord with the usual rule that the trial court must be given the opportunity to correct error *while correction is still possible.*" *State v. Pierce*, 433 S.W.3d 424, 429 (Mo. banc 2014) (emphasis in original).