

# In the Missouri Court of Appeals
## Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED101948 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | 1322-CR00082-01 |
| | ) | |
| KENNETH PAYNE, | ) | Honorable John F. Garvey Jr. |
| | ) | |
| Appellant. | ) | Filed: March 1, 2016 |

### OPINION

Kenneth Payne was found guilty by a jury in the Circuit Court of the City of St. Louis of one count of first-degree murder, one count of first-degree assault, and two counts of armed criminal action arising out of the January 2013 shooting of two shopkeepers in St. Louis. Payne appeals asserting two points of error: (1) that the trial court plainly erred in refusing to instruct the jury on the lesser included offense of voluntary manslaughter, and (2) that the trial court plainly erred in failing to *sua sponte* recuse itself because the court allegedly participated in pretrial plea negotiations and prejudged Payne's guilt.

We affirm because we find no plain error in either instance.

### Factual and Procedural Background

On January 3, 2013, Payne and Michell White entered a store in St. Louis near the intersection of South Grand Boulevard and Osage Street where Ali Slieman and Anan Abdallah

worked. Believing that White had shoplifted a candy bar, Abdallah and Slieman sought to prevent White and Payne from leaving the store. Surveillance video showed the confrontation as it continued outside in front of the store. The video then showed Payne shoot both Slieman and Abdallah causing Abdallah's death. Payne was charged with one count of first-degree murder, one count of first-degree assault, and two counts of armed criminal action.

On the day before trial started, the court noted on the record that it had engaged in a discussion with Payne off the record during which the court reviewed with Payne the surveillance video and the 911 call. The court observed that Payne's DNA had been found on a gun that was located near the store, and that White intended to testify against Payne, which would undermine any mistaken-identity defense. The court noted that Payne had decided not to plead guilty after a long off-the-record discussion had occurred during which options short of a trial were discussed with him, including the possibility of Payne pleading guilty to try to avoid a sentence of life imprisonment without the possibility of parole.

The case proceeded to trial. During the jury instruction conference, Payne offered an instruction on the lesser included offense of voluntary manslaughter, arguing that the issue of sudden passion had been injected into the case. The court refused the offered instruction and instead instructed the jury on first- and second-degree murder in addition to first-degree assault and armed criminal action.

The jury convicted Payne of one count of first-degree murder, one count of first-degree assault, and two counts of armed criminal action. The court sentenced Payne to life without the possibility of parole for first-degree murder, and to life imprisonment for each of the three other offenses.

## Standard of Review

Payne seeks plain error review on both of his claims of trial court error under Missouri Supreme Court Rule 30.20. We exercise our discretion to review for plain error only where the appellant asserting error establishes facially substantial grounds for believing that the trial court's error was evident, obvious, and clear, and that manifest injustice or a miscarriage of justice has resulted. *State v. Jones*, 427 S.W.3d 191, 195 (Mo.banc 2014). Plain error can serve as the basis for granting a new trial on direct appeal only if the error was outcome-determinative. *State v. Baxter*, 204 S.W.3d 650, 652 (Mo.banc 2006).

## Point I: Refusal to Instruct on Voluntary Manslaughter

In Point I, Payne argues that pursuant to *State v. Jackson*, 433 S.W.3d 390 (Mo.banc 2014), the trial court plainly erred in refusing to instruct the jury on the lesser included offense of voluntary manslaughter. In *Jackson*, the Missouri Supreme Court determined that "the trial court cannot refuse a defendant's request for [a] '*nested*' lesser offense instruction based solely on its view of what evidence a reasonable juror must believe or what inferences a reasonable juror must draw." *Id.* at 392 (emphasis added). The defendant in *Jackson*, charged with first-degree robbery, requested an instruction on second-degree robbery, but the trial court refused to give the lesser included offense instruction "because [in its view] there was no basis in the evidence for a reasonable juror to determine that the victim did not reasonably believe that [the defendant] was holding a gun to her back throughout the robbery." *Id.* The court did not give the requested second-degree robbery instruction or any other lesser included offense instruction, and the defendant was convicted of first-degree robbery. *Id.* at 394.

The Missouri Supreme Court reversed, finding that the defendant in *Jackson* was entitled to the requested instruction. *Id.* at 392. The Court reasoned that because "a jury *always* can

3

disbelieve all or any part of the evidence"—and because second-degree robbery consists merely of a subset of the elements of first-degree robbery—there was necessarily a basis in the evidence in *Jackson* for the jury to acquit the defendant of first-degree robbery but convict him of second-degree robbery. *Id.* (emphasis in original). The Court held that the trial court's refusal to give the defendant's requested instruction was reversible error. *Id.* The Court cautioned, however, that its holding was "limited to trials in which the defendant timely requests an instruction on a '*nested*' lesser-included offense." *Id.* at 406 n.14 (emphasis added).

Because voluntary manslaughter is not a nested lesser included offense of either first- or second-degree murder, *Jackson* is distinguishable from this case and provides no support to Payne. While it is certainly true that voluntary manslaughter is a lesser included offense of both first- and second-degree murder (*see* section 565.025[1]), it simply is not a *nested* lesser included offense of first- or second-degree murder. A nested lesser included offense is one that is separated from the greater offense by one differential element for which the State bears the burden of proof; the nested offense consists of a subset of the elements of the greater offense, therefore rendering it *impossible* to commit the greater offense without committing the lesser. *State v. Randle*, 465 S.W.3d 477, 479 (Mo.banc 2015).

Voluntary manslaughter is defined as causing the death of another person under circumstances that would constitute murder in the second degree, except that the death was caused under the influence of sudden passion arising from adequate cause. *State v. Redmond*, 937 S.W.2d 205, 208 (Mo.banc 1996); section 565.023.1. As charged in this case, the two greater offenses, first- and second-degree murder, are defined respectively as knowingly causing the death of another person after deliberation upon the matter (section 565.020.1), and knowingly

---

[1] All statutory references are to RSMo 2000 unless otherwise indicated.

causing the death of another person (section 565.021.1(1)). Because voluntary manslaughter includes an additional element not present in first- or second-degree murder, specifically the presence of sudden passion arising from adequate cause, it is possible to commit either of the two greater offenses without committing voluntary manslaughter. Voluntary manslaughter does not consist solely of a subset of the elements of those greater offenses. Also, the *defendant* bears the burden of injecting the issue of sudden passion for voluntary manslaughter. Section 565.023.2; *see also Redmond*, 937 S.W.2d at 208. Therefore, voluntary manslaughter is not a nested offense—it is not separated from either first- or second-degree murder by one differential element for which the State bears the burden of proof—and *Jackson* does not apply here.

Moreover, in this case unlike in *Jackson*, a lesser included offense instruction was given, and Payne was convicted of the greater offense. The jury here convicted Payne of first-degree murder after being instructed on both first-degree murder *and* the lesser included offense of second-degree murder. In *Jackson*, the jury was instructed only on first-degree robbery, with no instruction given for a lesser included offense. Thus, the circumstances of this case are distinguishable from *Jackson*, but closely resemble those in *State v. Meine*, 469 S.W.3d 491, 496 (Mo.App.E.D. 2015).

In *Meine*, we confirmed the continued validity after *Jackson* of the rule applied by the Missouri Supreme Court in *State v. Johnson*, 284 S.W.3d 561, 575-76 (Mo.banc 2009) and *State v. Glass*, 136 S.W.3d 496, 515 (Mo.banc 2004), that there is no reversible error where instructions for the greater offense and one lesser included offense are given and the defendant is convicted of the greater offense. 469 S.W.3d at 496 (citing *Johnson*, 284 S.W.3d at 575-76) ("The failure to give a different lesser-included offense instruction is neither erroneous nor prejudicial when instructions for the greater offense and one lesser-included offense are given

5

and the defendant is found guilty of the greater offense."). This rule is subject to only one exception: reversible error nevertheless lies where "the lesser offense that was actually submitted at trial did not 'test' the same element of the greater offense that the omitted lesser offense would have challenged." *Briggs v. State*, 446 S.W.3d 714, 720 n.9 (Mo.App.W.D. 2014).

Upon review of the relevant statutes and jury instructions, we find that the rule from *Meine, Johnson,* and *Glass* is applicable here because the second-degree murder instruction given in this case "tested" for the presence of the same element of first-degree murder, deliberation, that the omitted lesser included offense—voluntary manslaughter—would have challenged. To find Payne guilty of first-degree murder, the jury was required to find that Payne *deliberately* and knowingly caused Abdallah's death. For second-degree murder, however, the jury was required to find *only* that Payne knowingly caused the death. Thus, the second-degree murder instruction given at trial tested specifically for the presence of the "deliberation" element of first-degree murder. By "tested," we mean that the second-degree murder instruction gave the jury an opportunity to find Payne guilty of a lesser included offense if it refused to find a particular element of the greater offense, but the jury nevertheless found the element—here, deliberation—and convicted Payne of the greater offense.

Simply put, the refused voluntary manslaughter instruction in this case was not required to be given because it would have tested for the presence only of the *same* element of first-degree murder—deliberation—that the second-degree murder instruction had already tested for. To find Payne guilty of voluntary manslaughter, the jury would have been required to find only that Payne knowingly caused Abdallah's death while under the influence of sudden passion arising from adequate cause. Thus, the refused voluntary manslaughter instruction, like the

6

second-degree murder instruction, would have given the jury the opportunity to find Payne guilty of a lesser included offense if it refused to find the "deliberation" element of first-degree murder.

But the refused voluntary manslaughter instruction would *not* have tested for the presence of any other element of first-degree murder. On this issue, we reach the same result as the court in *Briggs*, 446 S.W.3d at 720 n.9. The *Briggs* court found that where, as here, the jury convicted the defendant of first-degree murder after being instructed also on second-degree murder, "[t]he omitted voluntary manslaughter instruction did not challenge a different element of first-degree murder" than deliberation. The court explained that "[i]nstead, a voluntary manslaughter instruction would have required the jury to find all of the elements of conventional second-degree murder, but to also find that [the defendant] acted under the influence of sudden passion." *Id.* Thus, the refused voluntary manslaughter instruction in *Briggs*, like the one here, would not have given the jury an opportunity to find the defendant guilty of a lesser included offense if it refused to find an element of first-degree murder other than deliberation. No jury may find a defendant guilty of voluntary manslaughter if it refuses to find that the defendant acted "knowingly" in killing his victim; that the defendant actually "caused" the victim's death; or that the victim died as a result of the defendant's actions. Consequently, the refused voluntary manslaughter instructions in Payne's case and in *Briggs* did not "test" for the presence of a different element of first-degree murder than deliberation, and here—as in *Briggs*—the rule from *Meine*, *Johnson*, and *Glass* is applicable. There is no reversible error, and Point I is denied.

## Point II: Failure to Recuse *Sua Sponte*

In Point II, Payne asserts that the trial court plainly erred in failing to recuse itself because the court participated in pretrial plea negotiations and prejudged Payne's guilt.

7

However, because Payne fails to show that the court had a disqualifying bias or prejudice, or that its failure to recuse constituted a manifest injustice, the court did not plainly err as to Point II.

It is presumed that a judge acts with honesty and integrity and will not undertake to preside in a trial in which the judge cannot be impartial. *Anderson v. State*, 402 S.W.3d 86, 92 (Mo.banc 2013) (citing *Worthington v. State*, 166 S.W.3d 566, 579 (Mo.banc 2005)). This presumption is overcome and disqualification is required only if a reasonable person would find an appearance of impropriety and doubt the impartiality of the court. *Worthington*, 166 S.W.3d at 579.

Missouri Supreme Court Rule 2-2.11(A) sets the standard for when a judge should recuse from a proceeding. *Anderson*, 402 S.W.3d at 91. The rule provides that "[a] judge shall recuse himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned," such as where "[t]he judge has a personal bias or prejudice concerning a party . . . or knowledge of facts that are in dispute." Rule 2-2.11(A)(1).

Lest the rule be interpreted too broadly, however, the Missouri Supreme Court has explained in applying it that

> [w]hether a fact requires recusal depends on the factual context, which gives meaning to the kind of bias that requires disqualification of a judge. Specifically, *a disqualifying bias or prejudice is one that has an extrajudicial source and results in an opinion on the merits on some basis other than what the judge learned from the judge's participation in a case.* In cases requiring recusal, the common thread is either a fact from which prejudgment of some evidentiary issue in the case by the judge may be inferred or facts indicating the judge considered some evidence properly in the case for an illegitimate purpose.

*Anderson*, 402 S.W.3d at 91 (quoting *Worthington*, 166 S.W.3d at 579) (emphasis added).

Here, Payne fails to show that a reasonable person would have had factual grounds to find even the appearance of impropriety or any doubt as to the court's impartiality. Payne fails to show that the court had a disqualifying bias or prejudice—i.e., one that has an extrajudicial

8

source and results in an opinion on the merits on some basis other than what the court learned from participating in the case. Payne does not allege that the court had a *personal* bias or prejudice toward a party, or that the court had personal knowledge of any of the facts in dispute. And Payne does not assert that the court had extrajudicial knowledge of the case, or that such knowledge resulted in an opinion on the merits on some basis other than what the court learned from its participation in the case.

Instead, Payne asserts pursuant to Rule 24.02(d) that the court improperly participated in plea discussions, actively worked to secure a guilty plea, and prejudged the evidence. Though the trial court may not have adhered to best practices in this case, we cannot conclude from this record that the court improperly participated in plea negotiations. The record reflects at most that the court reviewed the surveillance video and 911 call in this case with Payne, and that the court discussed with him the plea deal offered by the State. The record contains no further details about those interactions between the court and Payne. And even though, before trial, the court noted the strength of the State's case and that Payne had turned down the State's offer to plead guilty to avoid a life sentence without the possibility of parole, nothing the court said or did in this case establishes that the court had a disqualifying bias or prejudice against Payne.

Further, Payne fails to show that the court's failure to recuse *sua sponte* constitutes a manifest injustice. Payne makes only one specific suggestion of how the court's failure in this case to recuse was outcome-determinative. Payne suggests that because the court did not recuse, its alleged bias and prejudgment of the evidence led it to *prejudicially* refuse to give his requested instruction on voluntary manslaughter. However, since we have already held that the failure to give the voluntary manslaughter instruction was not error or prejudicial, the court's

9

refusal to give that instruction does not establish any basis for recusal. Thus, Payne has failed to explain how the court's failure to recuse constituted a manifest injustice. Point II is denied.

## Conclusion

For the reasons stated above, we affirm the judgment of the trial court.

_____
James M. Dowd, Judge

Robert M. Clayton III, P.J., and
Lawrence E. Mooney, J., concur.

10