

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED111281 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | 20SL-CR04204-01 |
| | ) | |
| RODRICK FOWLER, | ) | Honorable Joseph S. Dueker |
| | ) | |
| Appellant. | ) | Filed:  May 7, 2024 |

Rodrick Fowler ("Defendant") appeals the judgment, following a jury trial, finding him guilty of first-degree assault of a law enforcement officer ("first-degree assault") (Count I),[1] felony resisting arrest (Count II), and armed criminal action (Count III).  The trial court sentenced Defendant, a prior and persistent offender, to a total of twenty years of imprisonment.  We affirm.

## I.      BACKGROUND

The State charged Defendant with the above crimes for his involvement in a September 2020 incident in which Defendant allegedly fled from Officer C.F. ("Officer C.F." or "Officer") and "shot at" Officer as Defendant was fleeing.  A jury trial subsequently took place on October 24-26, 2022.

---

[1] When, as in this case, the victim of a first-degree assault is a law enforcement officer assaulted in the performance of his official duties, first-degree assault is a class A felony.  Section 565.050.1-.2 RSMo 2016; *see also* section 565.002(14)(a) RSMo 2016.

**A. Relevant Evidence Adduced at Trial Viewed in the Light Most Favorable to the Jury's Verdicts[2]**

Viewed in the light most favorable to the jury's verdicts, the following relevant evidence was adduced at Defendant's trial. On September 15, 2020, Officer C.F., a police officer in the K-9 unit, was assisting detectives in attempting to locate Defendant, who had active "felony warrants" for his arrest. Officer was operating a fully marked patrol car and dressed in his police uniform.

Officer C.F. observed Defendant and another person exit a residence and enter a vehicle. Officer then pulled his patrol car behind the suspect vehicle, and the suspect vehicle immediately "took off at a high rate of speed." Officer turned on his patrol car's lights, and the suspect vehicle attempted to flee, popping its front right tire in the process. The pursuit continued until the suspect vehicle pulled into a store parking lot and stopped by the side of a building. Defendant stepped out of the passenger side of the suspect vehicle at the same time Officer C.F. got out of his patrol car. Officer testified he was just a few feet away from Defendant and that Defendant looked directly at him as he commanded Defendant to stop and get on the ground. Defendant immediately "took off running" down an embankment toward a neighborhood.

As Officer C.F. pursued Defendant on foot, Officer pressed a button to release his K-9 from his patrol car, and the K-9 then ran towards Defendant as Officer and Defendant ran down the hill. As they ran next to a house, Defendant spun around, reached into his jacket, pulled out a black pistol, held it at shoulder level, and pointed it toward Officer C.F. The K-9, who was still running toward Defendant, then "clip[ped]" Officer on the leg, and Officer looked down for a second to see what touched him. At that moment, Officer C.F. heard two gunshots, one after the

---

[2] *See State v. McClain*, 685 S.W.3d 35, 37 (Mo. App. E.D. 2024) (citation omitted).

other. Another officer who was in the area similarly testified he heard two gunshots in rapid succession.

When Officer C.F. looked up, his K-9 was passing him, Defendant was turning around with his gun still at shoulder level, and Defendant continued to run around the corner of a house. Defendant then crossed the street and ran through several yards before he was ultimately apprehended by the K-9 and taken into custody by Officer. Defendant was later taken to the police station.

A resident of one of the houses Officer C.F. and Defendant ran past was standing in her driveway at the time of the foot pursuit. She testified that "someone came running out, [] the police came running after [him,] . . . [a] shooting t[ook] place," and there was a dog. She also wrote a statement shortly after the incident in which she stated, "I saw a young, black male run into my subdivision, and it appeared that he had a gun that was black. He looked like he fired two shots at someone." At trial, the resident clarified she saw the man shoot at a police officer.

Two guns were found in some bushes on the ground near where Defendant was apprehended, including the one that Officer C.F. had seen Defendant point at him, a Glock. The Glock contained nine live rounds, despite being able to hold at least twenty two. One of the guns contained a spent shell casing that had jammed in it after the gun had fired.[3] Officers looked in the area of the incident for another spent shell casing for about ninety minutes, but no such shell casing was found.

## B. Relevant Evidence in Support of the Defense Theory

The defense theory at trial was that Defendant did not shoot or fire a gun at Officer but instead threw the guns on the ground during the foot pursuit and the gun or guns accidentally went off. In support of this theory: (1) there was evidence that the Glock Officer saw in

---

[3] The record does not reveal which one of the guns contained the spent shell casing.

Defendant's hand was located in some bushes on the ground; (2) the only physical evidence that a gun was fired – the only shell casing found – was located in the action of one of the guns; (3) there was testimony that a shell casing found in the action of a gun is the result of a "jam" or malfunction; and (4) there was testimony indicating that when a gun is thrown, it can negligently or accidentally discharge.

## C.    Relevant Procedural Posture

Defendant made motions for judgment of acquittal at the close of the State's evidence and at the close of all of the evidence, and the trial court denied both motions.

During the instruction conference, the State requested instructions for felony resisting arrest (Count II) and armed criminal action (Count III). Defendant did not object to either instruction, the trial court accepted both instructions, and the court submitted them to the jury.

With respect to Count I, the State requested instructions for the charged offense of first-degree assault, the lesser included offense of second-degree assault, and the lesser included offense of fourth-degree assault. Each of these proposed instructions were based on the same criminal conduct charged by the State – Defendant "sho[oting] at" Officer[4] – and Defendant did not object to any of the instructions. The trial court accepted all three of the State's requested instructions for Count I and submitted them to the jury.

For Count I, Defendant requested an additional fourth-degree assault instruction based on criminal conduct which deviated from the criminal conduct charged by the State. Whereas the State charged Defendant with first-degree assault based on Defendant's conduct of "*sho[oting] at*" *Officer C.F.*, Defendant's requested instruction for fourth-degree assault alleged Defendant

---

[4] Specifically, the State's second information in lieu of indictment charged Defendant with attempting to cause serious physical injury to Officer C.F. by "*sho[oting] at*" him (emphasis added); the instruction for first-degree assault alleged Defendant, *inter alia*, "attempted to kill or cause serious physical injury to [Officer] *by shooting at him*" (emphasis added); the instruction for second-degree assault alleged Defendant, *inter alia*, "attempted to cause physical injury to [Officer] by means of a deadly weapon *by shooting at him*" (emphasis added); and the instruction for fourth-degree assault alleged Defendant, *inter alia*, "attempted to cause physical injury to [Officer] *by shooting at him*." (emphasis added).

4

"recklessly engaged in conduct that created a substantial risk of death or serious physical injury to [Officer C.F.] *by throwing his gun on the ground*." (emphasis added). The prosecutor objected to the submission of Defendant's requested instruction on the grounds that, *inter alia*, "[t]he State did not charge [Defendant] with throwing the gun . . .." The trial court sustained the prosecutor's objection and refused to submit Defendant's requested instruction for fourth-degree assault to the jury.

During defense counsel's closing argument, counsel told the jury, "[Defendant] is guilty of resisting arrest." Additionally, defense counsel argued, consistent with his defense theory, that the jury should not "convict [Defendant] of any assault" or the related charge of armed criminal action because the jury should find from the evidence that "[Defendant] did not shoot at a police officer," and instead should find "the gun went off twice when he threw it, or maybe both guns went off when he threw them."

The jury found Defendant guilty of first-degree assault for Count I, felony resisting arrest as submitted in Count II, and armed criminal action as submitted in Count III. Defendant filed a motion for a new trial asserting that, *inter alia*, the trial court erred in refusing to give Defendant's requested fourth-degree assault instruction. The trial court denied Defendant's motion. The court then entered a judgment in accordance with the jury's guilty verdicts and sentenced Defendant, a prior and persistent offender, to a total of twenty years of imprisonment. This appeal followed.

## II. DISCUSSION

Defendant raises two points on appeal. In his first point, Defendant argues the trial court erred in refusing to give his requested fourth-degree assault instruction. Defendant's second point on appeal contends there was insufficient evidence to support his conviction for felony resisting arrest.

**A.      Defendant's Instructional-Error Claim**

In Defendant's first point on appeal, he argues the trial court erred in refusing to give his requested fourth-degree assault instruction.  For the reasons discussed below, we disagree.

**1.      Standard of Review**

In this case, it is undisputed Defendant has preserved his instructional-error claim because he raised the trial court's failure to give his proposed instruction in his motion for new trial.  *See State v. Bellamy*, 680 S.W.3d 596, 605 n.7 (Mo. App. W.D. 2023).  Under these circumstances, we review Defendant's claim of instructional error *de novo*.  *See id.* at 605, 605 n.7.

In order for an appellate court to reverse a criminal case based on a claim of instructional error, a defendant must demonstrate the trial court committed instructional error and that the error was so prejudicial that it deprived him of a fair trial.  *State v. Sanders*, 522 S.W.3d 212, 215 (Mo. banc 2017).  A trial court does not commit instructional error by refusing to give an improperly worded jury instruction involving a lesser included offense.  *Id.* at 215, 219.  Moreover, an appellate court will affirm the trial court's refusal to give a proffered instruction "if the trial court was correct for any reason."  *Id.* at 215 (citation omitted).

**2.      Relevant Law Pertaining to Nested Versus Non-Nested Lesser Included Offenses**

Missouri Courts often characterize a lesser included offense at issue in a proffered instruction as "nested" or "non-nested."  *See, e.g., State v. Jensen*, 524 S.W.3d 33, 37-38 (Mo. banc 2017).  "A nested lesser included offense consists of a subset of the elements of the greater [charged] offense, rendering it impossible to commit the greater without necessarily committing the nested lesser included offense."  *State v. Brown*, 524 S.W.3d 44, 47 (Mo. banc 2017) (citation, internal quotations, and emphasis omitted); *see also* section 556.046.1(1) RSMo 2016[5]

---

[5] Unless otherwise indicated, all further statutory references are to RSMo 2016.

("[a]n offense is [] included when: . . . [i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged"); *State v. Randle*, 465 S.W.3d 477, 479 (Mo. banc 2015) (a nested lesser included offense is "separated from the greater offense by one differential element for which the [S]tate bears the burden of proof").[6]

In contrast, a non-nested lesser included offense is one which is specifically denominated as a lesser included offense by statute, but its elements do not consist of a subset of the elements of the greater charged offense, and, therefore, it is possible to commit the greater without necessarily committing the non-nested lesser included offense. *Brown*, 524 S.W.3d at 47-48; *State v. Payne*, 488 S.W.3d 161, 164 (Mo. App. E.D. 2016); *see also* section 556.046.1(2) ("[a]n offense is [] included when . . . [i]t is specifically denominated by statute as a lesser degree of the offense charged").[7]

---

[6] For example, first-degree involuntary manslaughter is a nested lesser included offense of a second-degree murder charge based on an accused knowingly causing the death of another person. *Meiners v. State*, 540 S.W.3d 832, 838 (Mo. banc 2018); section 565.021.1(1); *see also* section 565.024.1 RSMo Cum. Supp. 2018. This is because: (1) an accused is guilty of first-degree involuntary manslaughter under section 565.024.1 RSMo Cum. Supp. 2018 if he *recklessly* causes the death of another person, *id*.; (2) an accused is guilty of second-degree murder under section 565.021.1(1) if he *knowingly* causes the death of another person, *id*.; (3) "the only differential element between these two crimes is the [ ] *mens rea* requirement" on which the State bears the burden of proof, *Meiners*, 540 S.W.3d at 838; *State v. Ramirez*, 479 S.W.3d 640, 645 (Mo. App. W.D. 2015); *see also* section 565.021.1(1); section 565.024.1 RSMo Cum. Supp. 2018; (4) "[w]hen recklessness suffices to establish a culpable mental state, it is also established if a person acts purposely or knowingly," section 562.021.4; and, therefore, (5) under these circumstances, it is impossible to commit the greater offense of second-degree murder without necessarily committing the lesser included offense of first-degree involuntary manslaughter, *see Brown*, 524 S.W.3d at 47; *see also Meiners*, 540 S.W.3d at 838; section 556.046.1(1); *Randle*, 465 S.W.3d at 479.

[7] For example, voluntary manslaughter under section 565.023.1(1) is a non-nested lesser included offense of a second-degree murder charge based on an accused knowingly causing the death of another person. *Id*.; section 565.021.1(1); *Payne*, 488 S.W.3d at 164. This is because, *inter alia*: (1) voluntary manslaughter under section 565.023.1(1) is a lesser included offense of second-degree murder because it is specifically denominated as such by section 565.029.2(2)(a), *id*.; (2) an accused is guilty of voluntary manslaughter under section 565.023.1(1) if he causes the death of another person under circumstances that would constitute second-degree murder under section 565.021.1(1) except that the death was caused under the influence of sudden passion arising from adequate cause, section 565.023.1(1); (3) an accused is guilty of second-degree murder under section 565.021.1(1) if he knowingly causes the death of another person, *id*.; (4) "voluntary manslaughter [under section 565.023.1(1)] includes an additional element not present in . . . second-degree murder, specifically the presence of sudden passion arising from adequate cause," *see Payne*, 488 S.W.3d at 164; *see also* sections 565.023.1(1) and 565.021.1(1); and, therefore, (5) under these circumstances, it is possible to commit second-degree murder without committing voluntary manslaughter, *see id*.; *see also Brown*, 524 S.W.3d at 47-48; section 556.046.1(2).

### 3. Relevant Law Pertaining to Whether a Trial Court is Required to Give an Instruction Involving a Lesser Included Offense

#### a. The General Rule and its Applicability

As a general rule, a trial court is required to give a party's proffered instruction involving a nested or non-nested lesser included offense when three circumstances are met: (1) the party timely requests it; (2) there is a basis in the evidence for acquitting the defendant of the greater charged offense; and (3) there is a basis in the evidence for convicting the defendant of the lesser included offense for which the instruction is requested. *See Brown*, 524 S.W.3d at 46-48 (applying this rule to a non-nested lesser included offense); *State v. Jackson*, 433 S.W.3d 390, 392, 395-405 (Mo. banc 2014) (applying this rule to a nested lesser included offense). However, pursuant to the reasoning and holdings in the Missouri Supreme Court's decision in *State v. Sanders*, 522 S.W.3d 212, and the Western District's decision in *State v. Collins*, 154 S.W.3d 486 (Mo. App. W.D. 2005),[8] both explained in detail below, this general rule only applies when the party's proffered instruction alleges the defendant engaged in the same criminal conduct as alleged in the greater charged offense.

#### b. The Missouri Supreme Court's Decision in *State v. Sanders*

In *State v. Sanders*, the defendant was charged with committing second-degree murder under section 565.021.1(1) RSMo 2000[9] on the basis he knowingly caused the victim's death "by kicking her and strangling her." *Id.*; *Sanders*, 522 S.W.3d at 213-14, 213 n.1, 218. At trial, the defendant proffered an instruction for the nested lesser included offense of involuntary manslaughter under section 565.024.1(1) which alleged the defendant recklessly caused the

---

[8] We note *Collins* has been overruled on grounds that are not relevant to this appeal. *See Waggoner v. State*, 552 S.W.3d 601, 607 n.1 (Mo. App. W.D. 2018); *see also Rupert v. State*, 250 S.W.3d 442, 446-47 (Mo. App. E.D. 2008).

[9] All further references to the statutes at issue in *Sanders* are to RSMo 2000. *See Sanders*, 522 S.W.3d at 213 n.1.

victim's death "by kicking her," and the trial court refused to submit the instruction to the jury. *Id*.; *Sanders*, 522 S.W.3d at 213-18; *see also* footnote 6 of this opinion.

After a jury found the defendant guilty of second-degree murder, he appealed and argued the trial court erred in refusing to give his involuntary manslaughter instruction. *Sanders*, 522 S.W.3d at 215. The Missouri Supreme Court disagreed, holding the trial court did not err in refusing to give the defendant's proffered instruction because it alleged he engaged in criminal conduct (only "kicking" the victim) which impermissibly deviated from the conduct alleged in the greater charged offense of second-degree murder ("kicking *and* strangling" the victim). *Id*. at 216-19 (emphasis added). The Supreme Court further held and reasoned: (1) "for an offense of a lesser degree to be an included offense . . . it must be based on the criminal conduct that is alleged in the information or indictment as to the greater/charged offense"; (2) "[a] generally applicable concept [is] that a proper lesser included offense [instruction] is one that is consistent with the criminal conduct charged in the information or indictment"; and (3) a party cannot selectively alter or omit charged criminal conduct when requesting an instruction involving a lesser included offense because to hold otherwise would, *inter alia*, risk confusing the jury. *Id*. at 217-18 (partially quoting *Collins*, 154 S.W.3d at 495, and partially citing to *Collins* generally).

### c. The Western District's Decision in *State v. Collins* (cited approvingly by the Missouri Supreme Court's Decision in *State v. Sanders*)

In *State v. Collins*, the defendant[10] was charged with committing first-degree assault under section 565.050.1 RSMo 2000[11] on the basis he knowingly caused serious physical injury to the victim "by striking [the victim] with [his] hands or feet." *Id*.; *Collins*, 154 S.W.3d at 489, 489 n.1. At trial, the State proffered an instruction for the non-nested offense of third-degree

---

[10] We note that *Collins* involved an appeal from two co-defendants (a father and his son) after their cases were consolidated for trial. 154 S.W.3d at 489. For purposes of this opinion and simplicity, we will only refer to the relevant portions of the son's appeal and will refer to him as the defendant.
[11] All further references to the statutes at issue in *Collins* are to RSMo 2000. *See Collins*, 154 S.W.3d at 489 n.1.

assault under section 565.070.1(5)[12] on the basis the defendant knowingly caused physical contact with the victim, knowing that the victim would regard such contact as offensive or provocative "by poking [the victim] with his finger."[13]  *Id.*; *Collins*, 154 S.W.3d at 491-92, 495. After a jury found the defendant guilty of third-degree assault, he appealed and argued the trial court erred in submitting the State's proffered third-degree assault instruction.  *Collins*, 154 S.W.3d at 489-90, 493-97.  The Western District agreed, holding the State's proffered instruction was improper because it alleged the defendant engaged in criminal conduct ("poking [the victim] with his finger") which impermissibly deviated from the conduct alleged in the greater charged offense of first-degree assault ("striking [the victim] with [his] hands or feet").  *See id.* at 493-97; *see also Sanders*, 522 S.W.3d at 218 (similarly characterizing the holding in *Collins*).

### d.       Summary of the Above Relevant Law

In sum, when a party's proffered instruction involving a nested or non-nested lesser included offense alleges the defendant engaged in the same criminal conduct as alleged in the greater charged offense, a trial court is required to give the proffered instruction when three circumstances are met: (1) the party timely requests it; (2) there is a basis in the evidence for acquitting the defendant of the greater charged offense; and (3) there is a basis in the evidence for convicting the defendant of the lesser included offense for which the instruction is requested. *See Brown*, 524 S.W.3d at 46-48 (non-nested); *Jackson*, 433 S.W.3d at 390, 392, 395-405

---

[12] Section 565.070 was amended and transferred to section 565.054 by legislation which became effective January 1, 2017.  *Compare* section 565.070 RSMo 2000 *with* section 565.054 RSMo 2016.

[13] Although *Collins* was decided before Missouri Courts began characterizing lesser included offenses as nested or non-nested, we find the third-degree assault offense at issue in the proposed instruction in *Collins* was a non-nested lesser included offense of the greater charged offense of first-degree assault because: (1) third-degree assault was specifically denominated as a lesser offense of first-degree assault by statute, *Collins*, 154 S.W.3d at 495; (2) an accused was guilty of third-degree assault under section 565.070.1(5) if he knowingly caused physical contact with the victim, knowing that the victim would regard such contact as offensive or provocative, *id.*; (3) an accused was guilty of the first-degree assault offense at issue in *Collins* under section 565.050.1 if he knowingly caused serious physical injury to the victim, *id.*; (4) third-degree assault under section 565.070.1(5) included additional elements not present in first-degree assault, including the victim's regarding of physical contact as offensive or provocative, *id.*; *see also* section 565.050.1; and, therefore, (5) under these circumstances, it was possible to commit first-degree assault without committing third-degree assault. *See id.*; *Brown*, 524 S.W.3d at 47-48; *Payne*, 488 S.W.3d at 164; *see also* section 556.046.1(2); footnote 7 of this opinion.

(nested); *cf. Sanders*, 522 S.W.3d at 213-19 (nested); *Collins*, 154 S.W.3d at 489-97 (non-nested); *see also* footnote 13 of this opinion.

However, when a party's proffered instruction involving a nested or non-nested lesser included offense alleges the defendant engaged in criminal conduct which impermissibly deviates from that alleged in the greater charged offense, a trial court is not required to give such a proffered instruction and does not err in refusing to submit it. *See Sanders*, 522 S.W.3d at 213-19; *Collins*, 154 S.W.3d at 489-97; *see also* footnote 13 of this opinion. Again, this principle of law applies equally to nested and non-nested lesser included offenses. *See id.*

### 4. Analysis as to Whether the Trial Court Erred in Refusing to Submit Defendant's Proffered Fourth-Degree Assault Instruction in This Case

In this case, Defendant was charged with first-degree assault under section 565.050.1-.2 on the basis he attempted to cause serious physical injury to Officer C.F. by "*sho[oting] at*" him. (emphasis added). *See id.*; *see also* section 565.002(14)(a).

Defendant's proffered instruction for fourth-degree assault under section 565.056.1(4) alleged Defendant "recklessly engaged in conduct that created a substantial risk of death or serious physical injury to [Officer C.F.] *by throwing his gun on the ground*." *See id.* (emphasis added). Pursuant to the reasoning and holdings in *Sanders* and *Collins*, we hold the trial court did not err in refusing to give Defendant's proffered instruction because it alleged Defendant engaged in criminal conduct ("throwing his gun on the ground") which impermissibly deviated from that alleged in the greater charged offense of first-degree assault ("sho[oting] at" Officer C.F.). *See Sanders*, 522 S.W.3d at 213-19; *Collins*, 154 S.W.3d at 489-97. Moreover, because the reasoning and holdings of *Sanders* and *Collins* apply to nested and non-nested offenses alike and because the reasoning and holdings are dispositive in this case, we need not determine whether fourth-degree assault under section 565.056.1(4) is a nested or non-nested lesser included offense of first-degree assault under section 565.050.1-.2.

11

Our holding that the trial court did not err in refusing to give Defendant's proffered instruction because it alleged Defendant engaged in criminal conduct which impermissibly deviated from that alleged in the greater charged offense is consistent with: (1) Note on Use No. 4 to MAI-CR 419.16 (effective from July 1, 2017, to the present),[14] which is the Missouri Approved Criminal Instruction for fourth-degree assault involving physical injury or serious physical injury; and (2) 28 MOPRAC section 28:7.3.i (January 2024 update),[15] which is part of the Missouri Practice Series discussing "Offenses Which Are Not Lesser[]Included Offenses."

Note on Use No. 4 to MAI-CR 419.16 provides in relevant part: "If more than one option [as to the defendant's conduct] is supported by the evidence and is *within the scope of the charge*, each option so supported and charged may be submitted by a separate instruction [for fourth-degree assault]." *Id*. (emphasis added). Similarly, 28 MOPRAC section 28:7.3.i. states in relevant part: "In assault cases, care must be taken in instructing the jury on lesser[]included offenses. The lesser[]included offense cannot be submitted on a theory different than that submitted for the higher degree, i.e., the manner of the assault must be essentially the same for all levels of the offense." *Id*. (citing *Collins*, 154 S.W.3d 486).

In this case, because Defendant's proffered fourth-degree assault instruction alleged Defendant engaged in criminal conduct ("throwing his gun on the ground") which impermissibly deviated from that alleged in the greater charged offense of first-degree assault ("sho[oting] at" Officer C.F.), the proffered instruction was not within the scope of the greater charged offense and alleged the assault was committed in a different manner than that submitted for the higher offense. Accordingly, Defendant's proffered instruction was improper under *Sanders*, 522

---

[14] All further references to MAI-CR 419.16 and its Notes on Use are to the version effective from July 1, 2017, to the present.

[15] All further references to 28 MOPRAC section 28:7.3.i are to the January 2024 update.

12

S.W.3d at 213-19, *Collins*, 154 S.W.3d at 489-97, Note on Use No. 4 to MAI-CR 419.16, and 28 MOPRAC section 28:7.3.i.

On appeal, Defendant argues the trial court was required to submit his proffered fourth-degree assault instruction in order for Defendant to be able to present his defense theory to the jury, which claimed Defendant did not shoot or fire a gun at Officer but instead threw the guns on the ground during the foot pursuit and the gun or guns accidentally went off. This argument has no merit for two separate reasons. First, Defendant fails to cite to any controlling legal authority in support of this argument, and this Court can find no such authority.

Additionally, the record in this case shows that Defendant in fact argued his defense theory to the jury during his closing argument based on evidence Defendant adduced in support of his theory of the case. Specifically, defense counsel argued the jury should not "convict [Defendant] of any assault" or the related charge of armed criminal action because the jury should find from the evidence that "[Defendant] did not shoot at a police officer," and instead should find "the gun went off twice when he threw it, or maybe both guns went off when he threw them." Importantly, the jury's verdict finding Defendant guilty of first-degree assault and the related charge of armed criminal action based on his conduct of shooting at Officer C.F. demonstrates the jury believed the State's theory of the case and evidence over Defendant's.

**5. Conclusion as to Defendant's First Point on Appeal**

Based on the foregoing, the trial court did not err in refusing to give Defendant's proffered fourth-degree assault instruction. Defendant's first point on appeal is denied.

**B. Defendant's Sufficiency-of-the-Evidence Claim**

In Defendant's second and final point on appeal, he contends there was insufficient evidence to support his conviction of felony resisting arrest.

13

Section 575.150.1 provides in relevant part that:

> A person commits the offense of resisting . . . arrest . . . if he or she knows or reasonably should know that a law enforcement officer is making an arrest . . . , and for the purpose of preventing the officer from effecting the arrest . . . , he or she:
>
> (1) Resists the arrest . . . by fleeing from such officer . . . .
>
> . . .

The offense of resisting arrest is a misdemeanor unless it is shown to be a felony under section 575.150.5. *Id.*; *see also State v. Shaw*, 592 S.W.3d 354, 358 (Mo. banc 2019). Section 575.150.5 provides in relevant part that:

> The offense of resisting . . . an arrest is a class E felony for an arrest for a:
>
> (1) Felony;
>
> (2) Warrant issued for failure to appear on a felony case; or
>
> (3) Warrant issued for a probation violation on a felony case.[16]

*Id.* Accordingly, in order for there to be sufficient evidence to support a defendant's felony conviction pursuant to the aforementioned provisions of section 575.150.1 and .5, the State must prove: (1) the defendant knew or reasonably should have known a law enforcement officer was in the process of making an arrest; (2) the defendant resisted the arrest by fleeing from the officer; (3) the defendant did so for the purpose of preventing the officer from completing the arrest; and (4) the defendant was resisting arrest for a felony, a warrant issued for failure to appear on a felony case, or a warrant issued for a probation violation on a felony case. *See*

---

[16] The offense of resisting an arrest is also a class E felony if "the person fleeing creates a substantial risk of serious physical injury or death to any person." Section 575.150.5. This provision may not be used to enhance Defendant's resisting arrest charge to a felony even though the evidence adduced at trial may have supported it because "the State did not charge [Defendant] in this manner nor was the jury required to find the existence of these facts." *See State v. Steward*, 608 S.W.3d 184, 196 (Mo. App. E.D. 2020) (similarly holding). Here, Defendant was charged with committing felony resisting arrest because, *inter alia*, he fled from Officer C.F. while Officer was "making an arrest of [D]efendant for felonies," and the jury instruction for felony resisting arrest required to the jury to find that, *inter alia*, Defendant fled from Officer C.F. while Officer was "making an arrest of [D]efendant for felony warrants."

14

section 575.150.1(1); section 575.150.5(1)-(3); *see also State v. Nickels*, 598 S.W.3d 626, 639 (Mo. App. E.D. 2020) ("[t]he offense of resisting arrest requires that the officer be in the process of making an arrest [when a defendant's resisting occurs]").

In this case, Defendant does not dispute there was sufficient evidence adduced at trial to prove elements (1), (2), and (3), and, therefore, the evidence was sufficient to support a conviction for misdemeanor resisting arrest. *See id.*; *Shaw*, 592 S.W.3d at 358. Furthermore, Defendant only argues on appeal there was insufficient evidence to support his conviction for *felony* resisting arrest because the evidence adduced at trial that he was being arrested for active "felony warrants" was insufficient to show element (4), i.e., that he was resisting arrest for a felony, a warrant issued for failure to appear on a felony case, or a warrant issued for a probation violation on a felony case. *See* section 575.150.5(1)-(3). Under the circumstances of this case, we find it is unnecessary for us to determine this issue because, as explained below, defense counsel admitted during his closing argument that Defendant was guilty of felony resisting arrest in Count II, thereby waiving his right to challenge the sufficiency of the evidence as to that count.

"[T]he general rule is that when a defendant makes a voluntary judicial admission of fact before the jury, it serves as a substitute for evidence and dispenses with proof of the actual fact. The admission is conclusive on him for the purpose of the case." *Nickels*, 598 S.W.3d at 637 (citation omitted). Moreover, "[a]n admission made by an attorney in open court during trial which is against the interests of his client[] is presumed to be true and courts are warranted in acting thereon." *Id.* Accordingly, when a defendant or his defense counsel admits the defendant is guilty of a count in open court, a defendant waives the right to challenge the sufficiency of the evidence as to that count. *Id.* at 637-39.

In this case, in defense counsel's closing argument, counsel told the jury, "[Defendant] is guilty of resisting arrest." For Count II, the State charged Defendant with felony resisting arrest, and the only instruction submitted to the jury was for a felony, with no lesser included instruction for misdemeanor resisting arrest proffered by Defendant. Under these circumstances, we find defense counsel's statement constituted an admission that Defendant was guilty of felony resisting arrest in Count II.[17] *See id*. and *State v. Denzmore*, 436 S.W.3d 635, 641-43 (Mo. App. E.D. 2014) (both holding that words used by defense counsel in his opening statement and closing argument constituted an admission of the defendant's guilt). Accordingly, Defendant waived any sufficiency-of-the-evidence claim for his felony resisting arrest conviction. *See id*. (both similarly holding). Point two is denied.

### III.    CONCLUSION

The trial court's judgment is affirmed.

_____
ROBERT M. CLAYTON III, Presiding Judge

Philip M. Hess, J., and
Cristian M. Stevens, J., concur.

---

[17] We note that although defense counsel admitted Defendant was guilty of felony resisting arrest in Count II during his closing argument under the circumstances of this case, counsel also argued during closing argument that, consistent with his defense theory, the jury should not "convict [Defendant] of any assault" in Count I or the related charge of armed criminal action in Count III. In other words, part of defense counsel's trial strategy framed Defendant's defense to the jury as a contrast between Defendant's admitted guilt to felony resisting arrest in Count II and his professed denial as to the other charges of assault and armed criminal action in Counts I and III. *See Nickels*, 598 S.W.3d at 639 (similarly finding).

16