

# Missouri Court of Appeals
## Southern District

### In Division

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | No. SD38378 |
| | ) | |
| KYLE A. BYINGTON, | ) | Filed: **February 25, 2025** |
| | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF BOLLINGER COUNTY

Honorable Scott Lipke, Judge

**AFFIRMED**

Kyle Byington ("Defendant") appeals the trial court's judgment, following a jury trial, convicting him of first-degree murder under §565.020.[1] Defendant asserts that the trial court erred in denying his request to submit a voluntary manslaughter instruction to the jury. Because voluntary manslaughter is not a nested lesser included offense of first- or second-degree murder, and because the jury's rejection of the lesser included offense of second-degree murder demonstrates that there was no prejudice from the failure to give such instruction, we determine

---

[1] All statutory references are to RSMo 2016 as amended through January 29, 2021, the date of the alleged crime. Defendant was also convicted of abandonment of a corpse under §194.425. Defendant does not appeal this conviction and limits his appeal to claims of error regarding his first-degree murder conviction.

1

that the record fails to facially establish substantial grounds to believe that a manifest injustice or miscarriage of justice occurred and decline plain error review.

## Factual Background and Procedural History

Defendant does not challenge the sufficiency of the evidence for his first-degree murder conviction on appeal. The relevant facts, viewed in a light most favorable to the verdict, are as follows:[2]

Defendant and Victim had been in an on-and-off- again relationship for ten years. Victim would occasionally stay with Defendant. After Victim's mother did not hear from Victim for more than one month, Victim's mother filed a missing-persons report.

Upon receiving the missing-persons report and information Victim may be at Defendant's residence, officers obtained a search warrant and Defendant's consent to search his property. Officers found blood stains throughout Defendant's property that contained Victim's DNA. Officers also found a burial site where they exhumed Victim's decomposed corpse.

Victim's body had a trash bag zip-tied over her head and ligature marks that indicated strangulation. A medical examiner ruled Victim's death a homicide. Victim's death was confirmed to have occurred by strangulation which, according to expert testimony, would have taken at least ninety seconds.

At trial, the State introduced the above evidence along with three interviews conducted by police with Defendant. Defendant initially denied killing Victim, claiming that he last saw Victim in late January and did not see her again after she was picked up in a white car by an unknown male. In the second interview, Defendant's story changed and he claimed Victim killed herself and Defendant got scared. During that interview, Defendant also said that he could

---

[2] *See **State v. Christeson**, 50 S.W.3d 251, 257 (Mo. banc 2001).*

2

have "helped" Victim kill herself. In the third interview, Defendant stated that he didn't "feel bad for the [murder]" and felt that Victim's death was a relief.

During his testimony at trial, Defendant admitting to killing Victim. Defendant testified that on the day of Victim's death, he had been drinking with Victim when Victim attacked him. After the attack, Defendant stated that he walked to his mom's house to get cigarettes while Victim took a shower. When Defendant returned to the house, he and Victim got into a "pushing match" in which Defendant grabbed Victim, pushed her to the floor, then walked away. When Defendant came back into the room, he saw Victim on the floor with a dog leash around her neck, "taunting" him and threatening to kill herself. Defendant testified that he grabbed the dog leash, pushed Victim down, and said "Is this what you want?" Defendant testified that Victim did not fight him and became non-responsive. Defendant left the room and when he came back, he realized Victim was dead. Defendant zip-tied the trash bag over Victim's head, moved her body to a shed, and then spent five hours digging a grave. Defendant testified that he lied to Victim's family and led them to believe Victim was still alive.

During the jury instruction conference, Defendant proffered voluntary and involuntary manslaughter instructions, which the trial court rejected. Instead, the trial court instructed the jury on first-degree murder and second-degree murder. Defendant did not proffer a second-degree murder instruction, and did not object when the State proffered its instruction for second-degree murder that did not include any reference to sudden passion. The jury found Defendant guilty of first-degree murder and abandoning a corpse. The trial court sentenced Defendant to life imprisonment without eligibility for parole on the murder count and four years for the abandonment of a corpse. This appeal followed.

3

**Standard of Review**

The standard of review is disputed by the parties. Defendant claims he is entitled to *de novo* review because Defendant offered a voluntary manslaughter instruction in writing, and that instruction was refused. ***State v. O'Keefe***, 681 S.W.3d 615, 626 (Mo. App. E.D. 2023) ("In order to preserve a claim that the trial court erred in refusing to give a requested jury instruction, a defendant must submit the proposed instruction in writing."). The State contends that, because "Defendant did not request the second-degree murder jury instruction necessary to submit his requested voluntary [manslaughter] instruction," and the second-degree murder instruction was given to the jury without objection from Defendant, Defendant failed to preserve his claim of error.

To submit a voluntary manslaughter instruction where a defendant alleges he was under the influence of sudden passion, "a defendant's second-degree murder instruction must include, as an element of second-degree murder, a third paragraph finding that the defendant did not kill under the influence of sudden passion arising from adequate cause." ***State v. Redmond***, 686 S.W.3d 333, 343 n.4 (Mo. App. E.D. 2024) (citing ***State v. Mack***, 624 S.W.3d 436, 455 (Mo. App. E.D. 2021) and ***State v. Boyd***, 913 S.W.2d 838, 842 (Mo. App. E.D. 1995)). Defendant's failure to submit a correct instruction for second-degree murder, and failure to object to the State's proffered instruction for second-degree murder, renders his claim unpreserved.

An appellant may only seek review of any unpreserved claim of error under Rule 30.20. ***State v. Brandolese***, 601 S.W.3d 519, 530 (Mo. banc 2020). Plain error review is discretionary. ***State v. Perkins***, 640 S.W.3d 498, 501 (Mo. App. S.D. 2022). Plain error review is a two-step process:

> The first step requires a determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage

4

of justice has resulted. All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear. If plain error is found, the court then must proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.

*State v. Minor*, 648 S.W.3d 721, 731 (Mo. banc 2022) (quoting *Grado v. State*, 559 S.W.3d 888, 899-900 (Mo. banc 2018)). The appellant has the burden of showing that the error was outcome determinative. *State v. Wood*, 580 S.W.3d 566, 579 (Mo. banc 2019).

**Analysis**

Defendant cites *State v. Jackson*, 433 S.W.3d 390 (Mo. banc 2014), to allege that the trial court erred in refusing to give a voluntary manslaughter instruction because, "[w]hile the jury could have inferred from the evidence that [Defendant] acted purposely, the jury also could have drawn a different inference from the evidence and concluded that he acted under the influence of sudden passion." In *Jackson*, the Supreme Court of Missouri determined that "the trial court cannot refuse a defendant's request for [a] *'nested'* lesser offense instruction based solely on its view of what evidence a reasonable juror must believe or what inferences a reasonable juror must draw." *State v. Payne*, 488 S.W.3d 161, 163 (Mo. App. E.D. 2016) (citing *Jackson*, 433 S.W.3d at 392) (emphasis in the original).

In *Payne*, a defendant argued that the trial court committed plain error in failing to instruct on voluntary manslaughter. 488 S.W.3d at 163. In regards to the homicide charge, the trial court instructed on first- and second-degree murder. *Id.* The defendant argued that, under *Jackson*, the trial court's failure to instruct on voluntary manslaughter was plain error. *Id.* The Court determined that "[b]ecause voluntary manslaughter is not a nested lesser included offense of either first- or second-degree murder," *Jackson* did not apply. *Id.* at 164.

Because *Jackson*'s requirements are limited to nested lesser-included offenses, it does not apply to the voluntary manslaughter instruction in this case for the same reasons found by the

Court in **Payne**.  Therefore, we do not find that the trial court's failure to give a voluntary manslaughter instruction establishes substantial grounds to believe that manifest injustice or a miscarriage of justice occurred. [3]  This is particularly true where, as here, Defendant fails to establish any prejudice from the lack of such instruction.

In this case, as in **Payne** and unlike in **Jackson**, a lesser included offense instruction (second-degree murder) was given, and Defendant was convicted of the greater offense.  **Payne**, 488 S.W.3d at 164-65.  "The failure to give a different lesser included offense instruction is neither erroneous nor prejudicial when instructions for the greater offense and one lesser-included offense are given and the defendant is found guilty of the greater offense." **Redmond**, 686 S.W.3d at 344 (quoting **State v. Johnson**, 284 S.W.3d 561, 575 (Mo. banc 2009) and **State v. Glass**, 136 S.W.3d 496, 515 (Mo. banc 2004)).

Here, as in **Payne**, the second-degree murder instruction "tested" for the element of deliberation of first-degree murder that voluntary manslaughter would have tested.  **Payne**, 488 S.W.3d at 165.  Because the second-degree murder instruction only required the jury to find that Defendant knowingly murdered Victim, and the first-degree murder instruction required them to find that Defendant knowingly *and deliberately* killed Victim, by finding Defendant guilty of first-degree murder, the jury necessarily rejected the idea that Defendant did not deliberate before killing Victim.  **Id.**  "[T]he refused voluntary manslaughter instruction would *not* have tested for the presence of any other element of first-degree murder."  **Id.**  (emphasis in the original). Accordingly, there is no prejudice, here, as "the refused voluntary manslaughter instruction . . .

---

[3] In **Payne**, the Court held that because nested offenses consist of a subset of elements of the greater offense, it is impossible to commit the greater offense without committing the lesser.  488 S.W.3d at 164.  In contrast, "voluntary manslaughter includes an additional element not present in first- or second-degree murder, specifically the presence of sudden passion arising from adequate cause." **Id.**  Therefore, a defendant may commit either first- or second-degree murder without committing voluntary manslaughter. **Id.**  Here, the jury instruction for second-degree murder did not contain the element of killing under the influence of sudden passion arising from adequate cause.  Thus, Defendant could have committed first- or second-degree murder without committing voluntary manslaughter.

6

would not have given the jury an opportunity to find the defendant guilty of a lesser included offense if it refused to find an element of first-degree murder other than deliberation." *Id.* at 166; *see also **State v. Hamm***, 675 S.W.3d 630, 638 (Mo. App. E.D. 2023) (holding that, where the jury had the opportunity to reject deliberation and find the defendant guilty of the lesser offense of second-degree murder, but did not do so, the jury determined that the defendant deliberated and thus rejected the possibility that the defendant could be guilty of any homicide less than first-degree murder, including voluntary manslaughter based on sudden passion). Thus, we find the record does not facially establish substantial grounds to believe that a manifest injustice or miscarriage of justice occurred, and we decline to engage in further review.

**Conclusion**

The judgment of the trial court is affirmed.

MATTHEW P. HAMNER, J. – OPINION AUTHOR
JEFFREY W. BATES, J. – CONCURS
JACK A. L. GOODMAN, J. – CONCURS